No. 71,412

STATE OF KANSAS, *Appellee*, v. DONALD RAY GIDEON, *Appellant*.

(894 P.2d 850)

594

Opinion filed April 28, 1995.

*Jessica R. Kunen*, chief appellate defender, argued the cause and was on the brief for appellant.

*John K. Bork*, deputy attorney general, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Donald Ray Gideon, from sentences he received after he pleaded guilty to premeditated first-degree murder, aggravated kidnapping, aggravated criminal sodomy, and rape.

The defendant was sentenced to life imprisonment with no parole eligibility for 40 years (the hard 40) for first-degree murder, 408 months for aggravated kidnapping (an upward durational departure from the sentencing guidelines of 204 months), 154 months for aggravated criminal sodomy (an upward durational departure from the sentencing guidelines of 77 months), and 154 months for rape (an upward durational departure from the sentencing guidelines of 77 months). All sentences were ordered to be served consecutively. If the sentences imposed are affirmed

and the defendant earns the maximum good time available to him (currently 20%), he will first be eligible for parole sometime after his 119th birthday. Had the trial judge not imposed an upward durational departure on the three guidelines sentences, defendant would first be eligible for parole sometime after his 96th birthday.

Defendant raises 13 issues on appeal—some with sub-issues. The issues involve the hard 40 sentence, the upward durational departure from the sentencing guidelines, and whether the defendant's plea was voluntary.

The facts concerning the crimes are not in dispute. The facts are the defendant's version of what occurred as related to law enforcement officers and given by the defendant in a written and taped confession.

The victim, Stephanie Schmidt, worked at a restaurant in Pittsburg, Kansas, where the defendant was also employed. Around midnight on July 1, 1993, Schmidt asked the defendant to give her a ride home from Bootleggers, a bar in Frontenac, Kansas, after they attended a mutual friend's birthday party. The defendant and Schmidt got into his truck. Schmidt commented that the defendant was a "nice guy" and that she did not know how he could hurt anybody, though she knew he had been in prison before. The defendant told Schmidt he might be capable of hurting someone. The defendant varied from the route to Schmidt's apartment, and when she asked about it he offered to let her out of the truck. She did not get out, but at one point she reached for the door and he grabbed her. The defendant drove down several dirt roads to a deserted area in Cherokee County. He was in a rage. He raped Schmidt and then anally sodomized her. After he ejaculated the rage went away, and he had to work himself into another rage for the stated purpose of killing her.

The defendant took Schmidt by the hand from the truck and walked her into a wooded area. Schmidt was naked. The defendant handed Schmidt a screwdriver and told her that one of them had to die and that after what he had done she should kill him. Schmidt dropped her hand and began to turn away. The defendant choked her from behind and then from the front until he thought she was dead. He then tied Schmidt's bra tightly around

her neck to assure she was dead. He dragged her body several feet to a grassy area and left her clothes several feet from the body. The defendant hoped Schmidt's body would not be found for several months so DNA evidence would not be found. The defendant, as a prior sex offender, knew the Department of Corrections (DOC) had taken a blood sample for the express purpose of having a DNA profile of him on hand.

The defendant then left Kansas, abandoning the truck in Coos Bay, Oregon, and turned himself in to law enforcement authorities in Florida after a national television feature on this case was broadcast. The defendant was returned to Kansas, and after giving the confessions which will be discussed in greater detail herein, he aided authorities in recovering Schmidt's body.

## I. RIGHT TO A JURY DETERMINATION OF THE HARD 40

The defendant points out that at the time his guilty plea was taken, the trial court did not obtain a specific waiver of a jury determination of the hard 40 sentence. The defendant does admit that in the petition to enter a plea of guilty he acknowledged that by pleading guilty he waived the right to a jury determination of the hard 40 sentence. However, he asserts that a written waiver of rights is not a substitute for judicial inquiry in open court concerning a waiver of rights, citing State v. Browning, 245 Kan. 26, Syl. ¶ 5, 774 P.2d 935 (1989), and State v. Anziana, 17 Kan. App. 2d 570, 840 P.2d 550 (1992). The trial court in this case stated on the record that its understanding was that the guilty plea constituted a waiver of the hard 40 jury, and defendant's trial counsel agreed.

The defendant argues that although K.S.A. 1993 Supp. 21-4624(2) provides that the hard 40 proceedings shall be conducted by the court where the defendant has waived a jury trial, the provision does not expressly provide that the hard 40 jury is automatically waived upon a guilty plea. The defendant asserts that 21-4624(2) requires an express waiver of the hard 40 jury. He argues that the legislature has clearly expressed its intent that a jury determine imposition of the hard 40 sentence unless waived

in a manner provided by K.S.A. 22-3403 (waiver of jury trial in felony cases). According to the defendant, criminal statutes must be construed in favor of the defendant; therefore, the hard 40 sentencing must be conducted by a jury unless expressly waived.

K.S.A. 1993 Supp. 21-4624(2) states in pertinent part:

"[U]pon conviction or adjudication of guilt of a defendant of murder in the first degree based upon the finding of premeditated murder, the court upon motion of the county or trial attorney, shall conduct a separate sentencing proceeding to determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years. *The proceeding shall be conducted by the trial judge before the trial jury* as soon as practicable. . . . *The jury at the sentencing proceeding may be waived in the manner provided by K.S.A. 22-3403 and amendments thereto for waiver of a trial jury. If the jury at the sentencing proceeding has been waived or the trial jury has been waived, the sentencing proceeding shall be conducted by the court.*" (Emphasis added.)

The defendant's argument asks this court to interpret the last sentence of K.S.A. 1993 Supp. 21-4624(2). Interpretation of a statute is a question of law. *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993). "When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). See *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994).

The plain and unambiguous language of K.S.A. 1993 Supp. 21-4624(2) states that the hard 40 sentencing proceeding shall be conducted by the court if the trial jury has been waived. In *State v. Harmon*, 254 Kan. 87, 100, 865 P.2d 1011 (1993), this court recognized that "[t]he hard 40 sentencing statute is the only instance wherein the legislature has required that the jury be involved in the sentencing phase of the trial." However, the legislature has not required that the jury be involved in every hard 40 sentencing. Rather, the legislature provided that the defendant may waive the hard 40 jury and also that if the defendant has waived his trial jury, the sentencing proceeding *shall* be conducted by the court. By pleading guilty to first-degree murder, the defendant specifically waived a jury determination of his guilt. The defendant had no right to a hard 40 jury; he waived his trial

jury, and by the language of the statute the hard 40 proceeding was to be conducted by the court. A specific waiver by the defendant on the record of the right to a jury determination of the hard 40 sentence issue is not required when a defendant pleads guilty to first-degree murder and is subject to a hard 40 sentence.

## II. FAILURE TO INFORM

The defendant next argues that if by pleading guilty and waiving his trial jury he waived his hard 40 jury, then his plea was obtained in violation of the due process clause and therefore was involuntary. The defendant argues that he was not informed that a consequence of his guilty plea was waiver of the hard 40 jury. The defendant acknowledges that he does not have a constitutional right to a jury determination of his sentence. He reasons, however, that the Kansas Legislature has provided the right to a jury determination of the hard 40 sentence. He argues that his waiver of a trial jury was not knowing and voluntary because he was not informed that the waiver would also apply to his statutory right to a hard 40 jury, which could not impose the hard 40 sentence by less than a unanimous vote and without the sentencing judge's independent agreement that the sentence was proper. The defendant asserts that the failure to inform him of this consequence rendered the trial court's inquiry during his guilty plea hearing constitutionally inadequate and violated due process of law, citing *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). The remedy, according to the defendant, is to set his plea aside.

The trial court did inform the defendant that he had the right to a trial by jury and that by pleading guilty he waived this right. It did not inform him that by pleading guilty, thereby waiving his trial jury, he was not entitled to a hard 40 jury.

After accepting the defendant's plea and in scheduling sentencing, the trial court pointed out that its interpretation was that the hard 40 jury was waived, and the defendant's counsel agreed. The defendant did not object at that point, nor did he object at the sentencing hearing. More significantly, the defendant has never sought to withdraw his plea or argued that his plea was

involuntary because he did not realize a consequence of his guilty plea was that the hard 40 sentencing proceeding would be conducted by the court.

A point not raised in the trial court cannot be raised for the first time on appeal. *State v. Ji*, 251 Kan. 3, 17, 832 P.2d 1176 (1992) (defendant failed to raise in trial court ineffective assistance of counsel claim based on counsel's failure to have defendant's expert witnesses evaluate defendant using the proper legal standard for insanity in Kansas; appellate review precluded); *Noble v. State*, 240 Kan. 162, 169-70, 727 P.2d 473 (1986) (appellate review precluded when defendant failed to raise issue in trial court that he was not informed of his Fifth Amendment privilege); *State v. Holley*, 238 Kan. 501, 508, 712 P.2d 1214 (1986) (grounds for severance raised on appeal different than grounds presented to trial court; no appellate review of new grounds); *Lill v. State*, 4 Kan. App. 2d 40, 42, 602 P.2d 129 (1979) (appellate review of legality of guilty plea precluded where raised for first time on appeal). Because the defendant has never sought to withdraw his plea or argued to the trial court that his plea was involuntary because the court failed to inform him that by pleading guilty he had no right to a hard 40 jury, he is precluded from raising the issue for the first time on appeal.

In any event, the record here shows that the defendant's plea was knowingly and voluntarily made. He does not argue he was unaware that by pleading guilty the court alone would determine whether to impose the hard 40 sentence. He merely points out that the trial court did not inform him of this consequence of his plea. The defendant had no constitutional right to a hard 40 jury; that right was wholly statutory and was only implicated if he did not waive his trial jury. We find no error on this issue.

### III. AGGRAVATING CIRCUMSTANCES

The defendant next argues that the State failed to give notice of the evidence of aggravating circumstances it would present at the hard 40 proceeding.

The State is required to give notice at the time of arraignment of its intent to seek imposition of the hard 40 sentence. K.S.A.

1993 Supp. 21-4624(1). That statute also provides in pertinent part:

"In the sentencing proceeding, evidence may be presented concerning any matter that the court deems relevant to the question of sentence and shall include matters relating to any of the aggravating circumstances enumerated in K.S.A. 1993 Supp. 21-4625 and amendments thereto and any mitigating circumstances. Any such evidence which the court deems to have probative value may be received regardless of its admissibility under the rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. *Only such evidence of aggravating circumstances as the state has made known to the defendant prior to the sentencing proceeding shall be admissible,* and no evidence secured in violation of the constitution of the United States or of the state of Kansas shall be admissible." (Emphasis added.) K.S.A. 1993 Supp. 21-4624(3).

The defendant and the State disagree about the meaning of the italicized language quoted above. The defendant interprets the language to require the State to give notice of what evidence it will present at the hard 40 proceeding, not just notice of what aggravating circumstances it will rely on. The State, conversely, contends that the language only requires the State to give notice of the aggravating circumstances upon which it will rely, and only evidence of those aggravating circumstances is admissible.

The defendant argues that because of the severity of the hard 40 sentence, due process requires that he have notice of the evidence which will be presented. He points out that the State introduced his confession, and counsel was forced to object in the middle of the proceeding and without "necessarily" having all the information required to challenge the confession, such as police reports or taped statements.

The State argues that the defendant's appellate counsel's supposition that his trial counsel did not have all the information required to challenge the confession is incorrect; the State suggests that trial counsel had all materials concerning the defendant, including all reports, statements, confessions, prior records and other material. The State also argues that even if the defendant's construction of the statute is correct, its failure to detail the evidence was harmless. The State reasons that based on the aggravating circumstances it specified in its notice of intent to seek the hard 40, it was clear what evidence the State would present.

K.S.A. 1993 Supp. 21-4624(1), requiring that notice be timely given, does not detail what information must be contained in the notice. The State's interpretation of the language in subsection (3) is a reasonable one. The defendant was informed that the State would rely on three aggravating circumstances: He had previously been convicted of a crime in which he inflicted great bodily harm; he committed the murder to prevent or avoid a lawful arrest or prosecution; and the murder was committed in an especially heinous, atrocious, or cruel manner. Detailing the evidence the State would present to support each of these factors is unnecessary under the circumstances of this case. The defendant had only one prior conviction, and the only evidence of the events and the manner in which the murder was committed was contained in the defendant's confession to police. The State's notice was not inadequate.

## IV. DEFENDANT'S CONFESSION

The defendant's next argument is that the court erred in admitting evidence of his confession at the hard 40 proceeding. K.S.A. 1993 Supp. 21-4624(3) states in pertinent part that *"no evidence secured in violation of the constitution of the United States or of the state of Kansas shall be admissible."* (Emphasis added.)

The court permitted Kansas Bureau of Investigation Special Agent Scott Teeselink to testify about the defendant's confession. Teeselink testified that he was involved in investigating the disappearance of Schmidt by placing her and the defendant on the Kansas Most Wanted list, Schmidt as a missing person with foul play suspected and the defendant as a fugitive from justice. After the defendant subsequently turned himself in in Florida, Teeselink and a Pittsburg police officer drove to Florida to pick up the defendant. There, Teeselink interviewed the defendant, obtaining general information from him. Teeselink advised the defendant of his rights, and the defendant waived his rights. The defendant stated that he left Bootleggers with Schmidt but they went different directions once outside the bar. After Teeselink informed the defendant there was conflicting information about

what he did after leaving Bootleggers, the defendant ended the interview. The next day Teeselink began transporting the defendant back to Kansas. No further interrogation occurred during the drive, though Teeselink did admit that he told the defendant at least once that if it was the defendant's sister or mother he was looking for the defendant would want him (Teeselink) to "work this hard."

Upon arriving in Kansas on July 23, 1993, the defendant was taken first to the KBI headquarters and then to the Shawnee County Jail. On July 24, 1993, Teeselink asked the defendant to help in finding Schmidt, and the defendant replied, "Well, will you come back and see me the next day. I've got to think about it." The following day, after being *Mirandized*, the defendant stated, "I thought about it. I just can't do it. I thought you were talking about a plea." The next day, July 26, 1993, Teeselink and another agent again interviewed the defendant. The defendant was *Mirandized* and he signed a *"Miranda* card," waiving his rights. The defendant then gave the confession detailed earlier in this opinion. Before confessing, the defendant made several requests, including a request to call his mother to inform her of his confession before she found out from the media, to let Schmidt's family have input in sentencing, and to inform Schmidt's family that Schmidt asked the defendant to make sure her mom and dad knew she loved them both.

Throughout the interviews by Teeselink, the defendant did end interviews, but he did not specifically request to talk to an attorney or invoke his right to remain silent.

The defendant objected to Teeselink's testimony concerning the confession, arguing that the confession was involuntary and coerced. The court found that there was no evidence the confession was obtained unconstitutionally or otherwise illegally. The court admitted the testimony.

In *State v. Morris*, 255 Kan. 964, 971, 880 P.2d 1244 (1994), this court reiterated our standard of review concerning admissibility of custodial statements:

"The first question for this court to determine is whether there is substantial competent evidence to support the district judge's finding that the confession

was voluntary. In determining whether a confession is voluntary, a court is to look at the totality of the circumstances. The burden of proving that a confession or admission is admissible is on the prosecution, and the required proof is by a preponderance of the evidence. Factors bearing on the voluntariness of a statement by an accused include the duration and manner of the interrogation; the ability of the accused on request to communicate with the outside world; the accused's age, intellect, and background; and the fairness of the officers in conducting the interrogation. The essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused. *State v. Price*, 247 Kan. 100, Syl. ¶ 1, 795 P.2d 57 (1990). When a trial court conducts a full hearing on the admissibility of an extrajudicial statement by an accused, determines the statement was freely and voluntarily given, and admits the statement into evidence at trial, an appellate court accepts that determination if it is supported by substantial competent evidence. See *State v. Johnson*, 253 Kan. 75, 83-84, 853 P.2d 34 (1993)."

See also *State v. Garcia*, 250 Kan. 310, Syl. ¶ 2, 827 P.2d 727 (1992) ("If the findings of the trial court on a motion to suppress evidence are based upon substantial evidence this court on review will not substitute its view of the evidence for that of the trial court."). The trial court here did not specifically rule that the defendant made a voluntary, knowing, and intelligent confession, but the court did rule that the confession was not obtained unconstitutionally or illegally. This court will accept that determination if it is supported by substantial competent evidence.

Both the defendant and the State cite *State v. Newfield*, 229 Kan. 347, 623 P.2d 1349 (1981). There, the defendant voluntarily submitted to questioning but eventually stated that he wanted to talk to an attorney. The defendant decided to talk to a public defender. The KBI agents then told the defendant that he would have to tell his attorney the truth before the attorney could help him and that if he wanted to tell the KBI about the death being investigated it would have to be at that time because his attorney would advise him not to talk. The agents also told the defendant that he should think it over and that people would think more of him if he told the truth. They placed him under arrest for the murder and prepared to take his fingerprints. The defendant then, without further questioning by the agents, narrated a confession. 229 Kan. at 350-51. The trial court determined that the defendant's confession was voluntary and that the statements of the

agents after the request for counsel were not coercive. 229 Kan. at 352. This court, following an extensive discussion, affirmed, noting that the defendant's subsequent conduct indicated a willingness to assist the KBI agents. 229 Kan. at 357, 359.

This court in *Newfield* discussed *Michigan v. Mosley*, 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975). In *Mosley*, the United States Supreme Court interpreted *Miranda* to require some cessation of interrogation once an accused has invoked a *Miranda* right. The interrogator must "scrupulously honor" those rights once asserted. In *Newfield*, 229 Kan. at 355, this court stated:

"[T]his court must decide whether the State has adequately proved (1) that the accused knowingly and intelligently waived his right to retained or appointed counsel; (2) that interrogation ceased for an appreciable period when the accused requested consultation with an attorney; and (3) that the statements made by the police after the request for counsel did not amount to questioning, its functional equivalent, or statements known to be likely to produce an incriminating response."

The *Newfield* court also cited *State v. Kanive*, 221 Kan. 34, 558 P.2d 1075 (1976). In *Kanive*, the accused told the police he did not want to talk after he was given the *Miranda* warnings and questioned about a rape. He was later questioned by another officer about a robbery and murder, and he gave a confession. This court stated, "The prohibition against continued interrogation in the face of a refusal to talk does not invalidate a statement thereafter given where the right to remain silent has been voluntarily and knowingly waived at a later time." 221 Kan. at 37.

Here, the defendant was *Mirandized* after he turned himself into the Florida authorities. Teeselink questioned the defendant upon his arrival in Florida, but the questioning terminated at the defendant's request. During the drive from Florida to Topeka, no questioning took place. After arriving in Topeka, Teeselink asked for the defendant's help, and defendant told him to return the next day. The next day, the defendant terminated the discussion. The following day, Teeselink again approached the defendant. At that time, the defendant gave a full confession after being advised of his *Miranda* rights and signing a waiver of the rights. There is no evidence that the defendant unambiguously

invoked his right to remain silent; he did terminate questioning. Each time the defendant terminated questioning, the request was scrupulously honored and an appreciable time passed before he was approached again. At no time did the defendant ever invoke his right to counsel. Following his confession, the defendant gave full assistance to the authorities in their investigation. The trial court did not err in allowing Teeselink to testify about the confession made by the defendant.

## V. VICTIMS' STATEMENTS

The Schmidt family (the victim's father, mother, and sister) was permitted to make statements at the sentencing proceeding. The State offered the family's statements not as evidence but in compliance with the right of a victim to make a statement. The defendant objected that to do so violated his constitutional right to confrontation. The objection also was made that the Victims' Rights Amendment was unconstitutional and a denial of equal protection and due process. The court overruled the objection. Schmidt's father, mother, and sister then made statements concerning how Schmidt's death had affected them and what they thought the penalty should be. The main themes of the comments reflected that the defendant was a prior sex offender who should not have been released from prison, that the death penalty should be available, that what happened to Schmidt was like imposing the death penalty on her, and that the court should not permit the defendant to do the same thing to "another Stephanie."

The defendant argues that by considering the Schmidt family's statements at the hard 40 proceeding, imposition of the hard 40 sentence was imposed under the influence of passion, prejudice, or other arbitrary factors. He points out that the sentencing court explicitly noted the Schmidt family's comments in imposing sentence: "Based on the evidence offered today and the statements made by the victim's family and the record, I find the following aggravated factors exist beyond a reasonable doubt . . . ." The defendant contends that the statements were inadmissible because they were irrelevant. Moreover, defendant claims the statements were inflammatory and prejudicial as they were direct at-

tacks on the criminal justice system. The defendant also argues that admitting the statements denied him the right to cross-examination. He reasons that the court could not help but impose the hard 40 sentence in response to the inflammatory statements of the Schmidt family.

K.S.A. 1993 Supp. 21-4624(3) permits presentation of relevant evidence at the hard 40 proceeding but excludes evidence secured in violation of the United States and Kansas Constitutions. The Victims' Rights provision, article 15, § 15 of the Kansas Constitution, states in pertinent part:

"(a) Victims of crime, as defined by law, shall be entitled to certain basic rights, including the right to be informed of and to be present at public hearings, as defined by law, of the criminal justice process, and to be heard at sentencing or at any other time deemed appropriate by the court, to the extent that these rights do not interfere with the constitutional or statutory rights of the accused."

The defendant acknowledges that in *Payne v. Tennessee*, 501 U.S. 808, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991), the United States Supreme Court permitted testimony by the victims' grandmother in a death sentencing proceeding. The defendant was convicted of brutally stabbing to death a mother and her two-year-old daughter; her three-year-old son was also stabbed but survived. The grandmother testified that the three-year-old missed his mother and sister. The prosecutor commented extensively in closing argument about the impact of the crime on all the victims. The Court concluded:

"We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." 501 U.S. at 827.

The Court also stated, "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief. See *Darden v. Wainwright*, 477 U.S. 168, 179-183 [, 91 L. Ed. 2d 144, 106 S. Ct. 2464] (1986)." 501 U.S. at 825.

The defendant reasons that the Schmidt family did not testify here; they merely gave statements (not under oath). He suggests that the statements concerned subjects not admissible under *Payne*. Contrary to this assertion, the *Payne* Court did not set limits on the type of victim impact evidence which may be admissible.

In his reply brief, the defendant relies on *State v. Yanez*, 469 N.W.2d 452 (Minn. App. 1991). There, the victim gave a brief statement of the impact the defendant's crime (rape) had on her. She concluded, " 'Although nothing can replace what I have lost, his severe punishment will give me the peace of mind to say people can't get away with this. I'm saying this for me and for the girls he will rape after me. Give him all the time you can. After all, your daughter may be next.' " 469 N.W.2d at 454. The defendant informs this court that the *Yanez* court interpreted this statement as an emotional appeal to bias or prejudice. However, the court concluded that "[t]he record does not suggest in any way that the trial court took this appeal into consideration." 469 N.W.2d at 455.

The defendant attempts to distinguish *Yanez* on two grounds. First, the statements of the Schmidt family here were far lengthier and more egregious than those in *Yanez*. The statements do appear lengthier, but the defendant has not shown that the statements rendered the sentencing proceeding fundamentally unfair. Second, the trial court here specifically stated it was considering the statements of the family in imposing sentence. The defendant argued at oral argument that the trial court's statement that it was imposing the hard 40 sentence based in part on the statements of the Schmidt family clearly establishes that the court considered the family's emotional appeal. A quick reading of *Yanez* shows that the defendant's second distinction is incorrect. Like the statement of the trial court here ("Based on the evidence offered today *and the statements made by the victim's family* and the record . . . ."), the trial court in *Yanez* had made a similar statement: " 'The Court believes that under the circumstances of this case, *including for the reasons set forth in the victim's statement*, as well as the reasons disclosed in a review of the discovery

materials provided in the Court's file in response to discovery demands by your attorney . . . ." 469 N.W.2d at 454. Despite this statement by the trial court, the Minnesota appellate court held that the record did not suggest that the trial court had considered the emotional appeal of the victim.

Under K.S.A. 1993 Supp. 21-4627(3), this court is to determine "[w]hether the mandatory term of imprisonment was imposed under the influence of passion, prejudice, or any other arbitrary factor." Article 15, § 15 of the Kansas Constitution specifically permits the victims of crimes to be heard at sentencing as long as the defendant's constitutional and statutory rights are not violated. The defendant has not shown such violation here. The statements of the Schmidt family reflected the impact the defendant's crime had on them. The statements did reflect some considerations, such as the propriety of the death penalty and whether the defendant should have been released from prison after his prior offense, that should not be presented to a jury. However, the statements were made to the court and not to a jury. The court could properly determine what weight, if any, to give to the statements. The court's statement before sentencing the defendant referring to the Schmidt family's statements does not in itself show that the court improperly considered these statements. The court gave ample reasons for imposing the hard 40 sentence which were not related to the statements made by the Schmidt family. The defendant has not shown that the statements of the Schmidt family and the court's consideration of those statements rendered the imposition of the hard 40 sentence the result of passion, prejudice, or any other arbitrary factor.

When victims' statements are presented to a jury, the trial court should exercise control. Control can be exercised, for example, by requiring the victims' statements to be in question and answer form or submitted in writing in advance. The victim's statement should be directed toward information concerning the victim and the impact the crime has had on the victim and the victim's family. Allowing the statement to range far afield may result in reversible error. We do not find reversible error here.

## VI. MITIGATING FACTORS

In a hard 40 proceeding, the finder of fact is to determine whether one or more aggravating circumstances exist beyond a reasonable doubt and whether the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist. The finder of fact shall designate the statutory aggravating circumstances it found beyond a reasonable doubt. K.S.A. 1993 Supp. 21-4624(5). K.S.A. 1993 Supp. 21-4626 enumerates eight mitigating factors which may be considered in a hard 40 proceeding, but this list is noninclusive:

"Mitigating circumstances shall include, but are not limited to, the following:

"(1) The defendant has no significant history of prior criminal activity.

"(2) The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances.

"(3) The victim was a participant in or consented to the defendant's conduct.

"(4) The defendant was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor.

"(5) The defendant acted under extreme distress or under the substantial domination of another person.

"(6) The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired.

"(7) The age of the defendant at the time of the crime.

"(8) At the time of the crime, the defendant was suffering from post-traumatic stress syndrome caused by violence or abuse by the victim."

Nothing in these statutes requires the finder of fact to find the existence of mitigating circumstances beyond a reasonable doubt or to specify what mitigating circumstances are found.

As his sole evidence at the sentencing proceeding, the defendant submitted copies of reports of his prior institutionalizations, hospitalizations, and psychiatric and psychological evaluations. According to the defendant, these reports summarized his disturbed relationship with his mother, his history of institutionalizations (the defendant had been either incarcerated or institutionalized for all but 2 or 3 years of his life since the age of 13), and his history of suicide attempts. All of the reports were over 10 years old.

In imposing the hard 40 sentence, the court found the existence of three aggravating circumstances. The court then stated:

"The court further finds the following mitigating factors exist: First, the defendant has expressed remorse. Secondly, the defendant has accepted responsibility for his actions. And, thirdly, that the defendant eventually aided the authorities in winding up the investigation and at least putting some finality to the acts that he committed."

The court made no findings concerning the statutory mitigating factors now relied on by the defendant.

According to the defendant, the evidence he presented at the hard 40 proceeding supports the following statutory mitigating factors: "The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances." K.S.A. 1993 Supp. 21-4626(2). "The defendant acted under extreme distress." K.S.A. 1993 Supp. 21-4626(5). "The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of the law was substantially impaired." K.S.A. 1993 Supp. 21-4626(6). The defendant argues that the court erred in failing to state its findings with respect to these statutory mitigating circumstances. He asserts that the failure to find these mitigating circumstances violated due process, the Eighth Amendment, § 9 of the Kansas Constitution Bill of Rights, and the need for individual consideration in sentencing.

The defendant cites *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869 (1982). In *Eddings*, the defendant was convicted of first-degree murder. At the death sentencing hearing before the trial court, the defendant presented evidence of his upbringing which included a lack of discipline as well as physical abuse. In imposing the death sentence, the court found the existence of three aggravating circumstances and that the defendant's age (16) was a mitigating circumstance. With respect to the defendant's argument about his mental state and emotional disturbance resulting his unhappy upbringing, the court stated, " 'Nor can the Court in following the law, in my opinion, consider the fact of this young man's violent background.' " 455 U.S. at 109. The Supreme Court in *Eddings* applied the rule stated in *Lockett v. Ohio*, 438 U.S. 586, 604, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978): " [T]he Eighth and Fourteenth Amendments re-

quire that the sentencer . . . not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' " 455 U.S. at 110.

*Eddings* is easily distinguished for a reason pointed out by the State. In *Eddings*, the trial court had specifically refused, as a matter of law, to consider the defendant's proffered evidence in mitigation. Here, conversely, the trial court did not refuse to consider the proffered evidence; the court merely failed to indicate whether or not it found those three factors in mitigation.

The defendant has failed to show that the hard 40 sentence was imposed arbitrarily or in violation of his constitutional or statutory rights with respect to mitigating circumstances. Nothing in the hard 40 statutes requires the finder of fact to specify what mitigating factors are found; only aggravating factors must be designated. However, because the hard 40 proceeding was tried to the court rather than to a jury, the hard 40 ruling is more clearly specified in the record here than we would normally have. The court did find three non-statutory mitigating circumstances: the defendant expressed remorse, he took responsibility for the offense, and he aided the authorities in ultimately concluding their investigation.

The evidence presented by the defendant does reflect a history of emotional problems. However, it cannot be said that the evidence mandates the conclusion that the crime was committed while the defendant was under the influence of extreme mental or emotional disturbances or extreme distress or that his ability to conform his conduct to the law was substantially impaired. The trial court did not specifically refuse to consider the evidence of the defendant's troubled past. As the State points out, the evidence conflicts with the defendant's assertion of these mitigating factors. In his confession, the defendant stated that his rage disappeared after he ejaculated and that he had to work himself up into another rage before killing Schmidt. In light of the overwhelming evidence of aggravating circumstances, we cannot say that the court erred in failing to find and specify these three statutory mitigating factors on the record.

## VII. HEINOUS, ATROCIOUS, OR CRUEL MANNER

The State sought to establish three aggravating circumstances:

"(1) The defendant was previously convicted of a felony in which the defendant inflicted great bodily harm, disfigurement, dismemberment or death on another.

. . . .

"(5) The defendant committed the crime in order to avoid or prevent a lawful arrest or prosecution.

"(6) The defendant committed the crime in an especially heinous, atrocious or cruel manner." K.S.A. 1993 Supp. 21-4625.

The court found each of these three aggravators beyond a reasonable doubt. The defendant takes issue with the court's findings of aggravating circumstances (1) and (6); (6) is discussed in this issue and (1) is discussed later in this opinion.

In finding that the crime was committed in an especially heinous, atrocious, or cruel manner, the court stated:

"[T]he court finds that the defendant committed this murder in an especially heinous, atrocious or cruel manner. The defendant drove his victim into the country in the dark of night, raped her and sodomized her, forced her from the vehicle, made her stand naked in the dark and told her that one of them had to die. He humiliated her, terrorized her and finally took her life. It's reasonable to conclude that all this time she knew that she would die. And whether it took five minutes or five hours is irrelevant. In my view it was a heinous and atrocious and cruel offense and nothing else can be said about it."

Both parties cite *State v. Willis*, 254 Kan. 119, 865 P.2d 1198 (1993). There, this court stated:

"The term 'heinous' means extremely wicked or shockingly evil; 'atrocious' means outrageously wicked and vile; 'cruel' means pitiless or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.

"A crime is committed in an especially heinous, atrocious, or cruel manner when the perpetrator inflicts serious mental anguish or serious physical abuse before the victim's death. Mental anguish includes a victim's uncertainty as to [his] or [her] ultimate fate." 254 Kan. at 130.

The defendant contends that the evidence was insufficient to find the murder was committed in an especially heinous, atrocious, or cruel manner. The defendant argues that reliance on the fact that he raped and sodomized Schmidt before killing her are improper factors to rely on because he was convicted of and

sentenced for those crimes separately. He asserts that there was no evidence he intentionally sought to humiliate or terrorize Schmidt and that the killing was done quickly and with no torture. The defendant reasons that the facts here do not meet the definition of "heinous, atrocious, or cruel" specified in *Willis*.

Viewed in the light most favorable to the prosecution, the evidence is sufficient to find beyond a reasonable doubt that the murder was committed in an especially heinous, atrocious, or cruel manner. There was very little testimony concerning the trauma suffered by Schmidt before the killing. This is because there are no surviving witnesses but the defendant and because of the time which elapsed before Schmidt's body was discovered. The defendant took Schmidt to a deserted area in the country. He forced her to stand naked in a field. He told her one of them had to die, handed her a screwdriver, and told her she should kill him.

The defendant's claim that this was either a suicidal gesture or would justify a finding of self-defense is, as the State suggests, absurd. Schmidt began to turn, and the defendant then strangled her to death. Moreover, there was evidence that throughout the course of the incident Schmidt knew what her ultimate fate would be; she was certain she would not be allowed to live. Schmidt mentioned to the defendant that he was nice and she did not think he was capable of hurting someone, and the defendant warned Schmidt that he might indeed be capable of hurting someone. This exchange shows Schmidt's concern for her safety. Additional proof that the victim knew she was going to die is the message she asked the defendant to convey to her parents. This constitutes serious mental anguish sufficient to support a finding that the murder was committed in an especially heinous, atrocious, or cruel manner. In addition, based on the facts set forth above, the strangulation of the victim was especially heinous, atrocious, and cruel. See *Johnson v. State*, 465 So. 2d 499, 507 (Fla.), *cert. denied* 474 U.S. 865 (1985).

## VIII. PRIOR CONVICTION FOR RAPE

The defendant also argues that the evidence was insufficient

to support the trial court's finding of the aggravating circumstance that he was previously convicted of a crime in which he inflicted great bodily harm on another. In finding this aggravating circumstance, the court relied on the defendant's 1983 conviction for rape and aggravated sodomy.

The defendant argues that the crime of rape is insufficient to constitute great bodily harm. He contends that there was no evidence that he inflicted bodily harm above and beyond the crime of rape in the 1983 conviction. The State, conversely, maintains that the crimes of rape and aggravated sodomy are inherently crimes in which great bodily harm is inflicted.

Our criminal code does not define great bodily harm. In *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 (1984), this court stated:

"Bodily harm has been defined as 'any touching of the victim against [the victim's] will, with physical force, in an intentional hostile and aggravated manner.' [Citation omitted.] The word 'great' distinguishes the bodily harm necessary in [the offense of aggravated battery] from slight, trivial, minor or moderate harm, and as such it does not include mere bruises, which are likely to be sustained in simple battery."

This court has held that rape constitutes sufficient bodily harm to support a conviction of aggravated kidnapping, see *State v. Zamora*, 247 Kan. 684, 695, 803 P.2d 568 (1990), but this court has not expressed an opinion whether rape constitutes great bodily harm.

We hold that the conviction of the crime of rape or aggravated criminal sodomy is sufficient to find that the defendant inflicted great bodily harm. We decline to hold there are different degrees of rape and aggravated criminal sodomy, as defendant suggests, so as to require a finding that a prior rape or aggravated sodomy was worse than "ordinary" or inherent in the elements of the crime before the crime constitutes great bodily harm. Rape and aggravated criminal sodomy are extremely invasive offenses constituting great bodily harm.

## IX. OUTWEIGHING OF FACTORS

Defendant argues the trial court failed to find that the aggravating factors outweighed the mitigating factors beyond a rea-

sonable doubt. In imposing the hard 40 sentence, the court specifically found the existence of three aggravating factors beyond a reasonable doubt, and the court further found the existence of three mitigating factors. The court then stated: "The court further finds that the aggravating circumstances are not outweighed by the mitigating circumstances."

K.S.A. 1993 Supp. 21-4624(5) states in pertinent part:

"If, by unanimous vote, the jury finds *beyond a reasonable doubt* that one or more of the aggravating circumstances enumerated in K.S.A. 1993 Supp. 21-4625 and amendments thereto exist *and, further,* that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant shall be sentenced pursuant to K.S.A. 1993 Supp. 21-4628 and amendments thereto; otherwise, the defendant shall be sentenced as provided by law. The jury, if its verdict is a unanimous recommendation of a sentence of a mandatory term of imprisonment of 40 years, shall designate in writing, signed by the foreman of the jury, the statutory aggravating circumstances which it found *beyond a reasonable doubt*. . . . In non-jury cases, the court shall follow the requirements of this subsection in determining the sentence to be imposed." (Emphasis added.)

According to the statute, the trier of facts must find *beyond a reasonable doubt* that the aggravating circumstances are not outweighed by any mitigating circumstances. See *State v. Perez*, 251 Kan. 736, 745, 840 P.2d 1118 (1992); PIK Crim. 3d 56.01-F.

The defendant reasons that because the trial court here did not include the words "beyond a reasonable doubt" in finding that the aggravating circumstances were not outweighed by any mitigating circumstances, its decision to impose the hard 40 sentence was arbitrary and a violation of due process. The defendant states, "The court in the present case could easily have held the defendant to a higher standard by assuming that the mitigating circumstances must outweigh the aggravating factors by a preponderance of the evidence, before it would reject the Hard Forty," and "The court clearly did not apply the correct burden of proof to the defendant's case."

The defendant's argument is mere speculation. The trial judge is presumed to have applied the correct standard of proof absent a showing to the contrary. See *Fox v. Wilson*, 211 Kan. 563, Syl. ¶ 4, 507 P.2d 252 (1973). The trial judge appears to have been

tracking K.S.A. 1993 Supp. 21-4624(5) by referencing the aggravating circumstances and mitigating factors and then generally following the statutory language that the aggravating circumstances were not outweighed by the mitigating circumstances. PIK Crim 3d 56.01-D as it existed at the time of sentencing stated: "The State has the burden of proof to persuade you beyond a reasonable doubt that there are one or more aggravating circumstances and that they outweigh any mitigating circumstances." The trial judge knew the burden of proof and correctly applied it.

We are required by K.S.A. 1993 Supp. 21-4627(3) to review imposition of the hard 40 sentence and determine whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor and whether the evidence supports the findings that the aggravated circumstances existed and that any mitigating circumstances were insufficient to outweigh the aggravating circumstances. On the record before this court, we hold that the sentence was not imposed arbitrarily or as a result of passion or prejudice, and the evidence does support the court's findings that the aggravated circumstances were not outweighed by any mitigating circumstances. The trial court did not err in imposing the hard 40 sentence.

## X. NOTICE OF THE DEPARTURE FACTORS

The defendant's remaining issues on appeal concern the guidelines sentences imposed for aggravated kidnapping, rape, and aggravated criminal sodomy. The court imposed departure sentences of 408 months, 154 months, and 154 months respectively and ordered that the sentences be served consecutively. These sentences constitute the maximum sentences available. See K.S.A. 1993 Supp. 21-4719(b); K.S.A. 1993 Supp. 21-4720(b). The defendant's criminal history category was level A (three or more person felonies). Aggravated kidnapping is a severity level 1 conviction, and rape and aggravated criminal sodomy are severity level 2 convictions. The maximum grid sentence for aggravated kidnapping is 204 months, and the court issued a durational departure and sentenced the defendant to 408 months. Because of

the departure on aggravated kidnapping and the imposition of consecutive sentences, the defendant's criminal history was reduced to level 1 for the rape and aggravated criminal sodomy convictions. The maximum grid sentence for those offenses is 77 months, and the court issued durational departures and sentenced the defendant to 154 months for each of those offenses. All guidelines sentences were ordered to be served consecutively, for a total term of 716 months. This sentence falls within the range permissible by the Kansas Sentencing Guidelines Act (KSGA).

The defendant first argues that the State's motion for a durational departure was insufficient. K.S.A. 1993 Supp. 21-4718(a) provides in pertinent part:

"(1) Whenever a person is convicted of a felony, the court upon motion of either the defendant or the state, shall hold a hearing to consider imposition of a departure sentence. The hearing shall be scheduled so that the parties have adequate time to prepare and present arguments regarding the issues of departure sentencing. . . . The parties may submit written arguments to the court prior to the date of the hearing and may make oral arguments before the court at the hearing. . . ."

Both the State and the defendant filed motions for a durational departure. Neither the State nor the defendant listed the grounds upon which departure was sought. The defendant now argues that the State was required to give notice not only of the request for departure but also of the grounds upon which departure was sought.

The defendant cites *Burns v. United States*, 501 U.S. 129, 136, 115 L. Ed. 2d 123, 111 S. Ct. 2182 (1991), where the United States Supreme Court held that before a trial court can issue a departure sentence of its own volition on a ground not identified prior to sentencing by the prosecution or in the presentence investigation (PSI) report, the court must give notice that it is contemplating a departure and specify the reason. In *Burns*, the PSI report stated that there were no factors that would warrant departure, and the prosecution did not seek departure. 501 U.S. at 131. Construing Rule 32 of the Federal Rules of Criminal Procedure, the Court found that the legislative history indicated that Congress did not intend the trial court to issue a departure sen-

tence sua sponte without first giving notice to the parties. 501 U.S. at 135.

The defendant reasons that just as with Rule 32, K.S.A. 1993 Supp. 21-4718 must be construed to require the State to give notice of the grounds on which it seeks a departure sentence. The defendant reasons that he was denied notice and a meaningful opportunity to be heard. He points out that K.S.A. 1993 Supp. 21-4718(a)(1) requires that a hearing on departure be scheduled "so that the parties have adequate time to prepare and present arguments regarding the issues of departure sentencing." He reasons that if he is entitled to a hearing and opportunity to prepare and present arguments concerning departure, he must be informed of what the departure issues are.

K.S.A. 1993 Supp. 21-4718(a) was amended by the 1994 legislature to require that the reasons for departure be stated in a departure motion: "The motion shall state the type of departure sought and the reasons and factors relied upon." L. 1994, ch. 291, § 58. The remaining language of that statute remains substantially the same and still requires the court to schedule the hearing so the parties have adequate time to prepare and present arguments regarding the departure issues. The State points out that it filed a sentencing memorandum the morning of sentencing, specifying the grounds on which departure was sought. K.S.A. 1993 Supp. 21-4718(a) provides in part that "[t]he parties may submit written arguments to the court *prior to the date of the hearing.*" (Emphasis added.)

The defendant did not object in the trial court that the State's departure motion was insufficient. The State argues that the defendant has not preserved this issue for appeal.

The statute in effect at the time of the defendant's sentencing did not expressly require the State to specify the grounds upon which departure was sought. The Kansas Legislature has since required specific notice. The defendant failed to object in the trial court that the notice was insufficient. The defendant himself sought departure without specifying the factors upon which he relied. Moreover, he has not shown that he was unaware of the departure grounds on which the State was relying. The State did

file a sentencing memorandum specifying the departure factors, although the memorandum was not filed until the date of the hearing. The defendant did not request additional time to prepare after receiving the State's memorandum. The defendant has not shown that he was denied a reasonable opportunity to be heard on the departure issues, and we conclude that he is not entitled to a new sentencing hearing based on his argument in this issue.

## XI. NOTICE BY COURT OF DEPARTURE FACTOR

The defendant also argues that the court relied on his "future dangerousness" as a departure factor, a factor not argued by the State. The defendant argues, similarly to his earlier argument, that the court was required to give notice of its intent to depart on that factor.

K.S.A. 1993 Supp. 21-4718(b) provides: "If the court decides to depart on its own volition, without a motion from the state or the defendant, the court must notify all parties of its intent and allow reasonable time for either party to respond if they request." Again, the legislature has since amended this statute by including the following language: "The notice shall state the type of departure intended by the court and the reasons and factors relied upon." K.S.A. 1994 Supp. 21-4718(b).

The defendant acknowledges that there is some uncertainty whether the trial court actually relied on his future dangerousness as a departure factor. K.S.A. 1993 Supp. 21-4716(a) states that if a departure sentence is issued, "the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." At the sentencing hearing, the court gave its reasons for issuing an upward departure:

"[T]he court finds that there is a substantial and compelling reason for departure. The defendant took advantage of the trust that this girl had placed in him. She suffered the pain and humiliation of the acts of rape and sodomy, and I believe knew at the same time that she was probably not going to survive it. The defendant has established an unquestionable propensity to commit these kinds of crimes, rape, sodomy and murder, and I am convinced that if he is ever released from custody he will continue to commit the same acts."

In its journal entry, however, the court made no mention of future dangerousness as a reason for departure. The journal entry reads in pertinent part:

"Aggravating factors cited as a basis for departure sentence:

"The defendant's conduct during the commission of the current offense manifested excessive brutality to the victim in a manner not normally present in that offense.

"It was reasonable to conclude from the evidence that during the crimes of kidnapping, rape and sodomy the victim knew she would not be allowed to live. Defendant took advantage of the trust place[d] in him by the victim."

The State argues that nothing in K.S.A. 1993 Supp. 21-4718 required the court to give notice of its intent to depart or the reasons for departure in this case. K.S.A. 1993 Supp. 21-4718(b) does require notification "[i]f the court decides to depart on its own volition, without a motion from the state or the defendant." The State reasons that as there was a motion for departure filed by the State, the statute did not require the court to give notification of its intent to depart. The State did not mention future dangerousness in its request for upward departure, nor was any language included in its sentencing memorandum that can be construed to suggest future dangerousness would be relied on as a ground of departure. The State did mention it would rely in part on the factors set out in the victim impact statements. There are no victim impact statements in the record. The PSI report that was completed seven days before sentencing states they had not been received as of that date and would be added to the record when received. The victim's parents and sister did make oral statements at the hearing and pointed out defendant's future dangerousness. That would not give the defendant adequate time to respond, and it is error to use a factor for upward departure of a sentence that the defendant has not received notice of until presented at the sentencing hearing.

The fact that it is error does not mean it is reversible error. In the context of the denial of allocution, we have said the following:

"For a defendant to successfully assert error based upon a denial of the opportunity to present evidence in mitigation of punishment pursuant to the right to allocution in K.S.A. 1992 Supp. 22-3424(4), the defendant must make a proffer of the contemplated evidence comparable to that required by K.S.A. 60-405." *State v. Borders*, 255 Kan. 871, Syl. ¶ 4, 879 P.2d 620 (1994).

The same rationale applies where the trial court fails to give prior notice of a departure factor upon which it will rely. The defendant must make some proffer of the evidence he would present (or the argument he would make) to refute the factor before this court will find reversible error. The defendant has failed to make such a proffer here.

Here, most of the evidence of future dangerousness is based on evidence presented by the defendant. If the defendant puts evidence in the record such as his prior record and medical reports, he necessarily knows the material will be considered in sentencing. The defendant also spoke in his own behalf and made it clear that he had tried to conquer his propensity to commit this type of criminal act and was unsuccessful. The trial court had evidence before it that the defendant had served a lengthy prison sentence for rape and aggravated sodomy. While in prison, he received counseling as a sex offender prior to his release on parole. There was testimony that while incarcerated he had prepared or worked on a pamphlet or paper on rage that was and may still be used by the DOC. While on parole he was given further counseling. He was on parole and apparently had counseling available when he committed these crimes. He also related another rape he committed while on parole that was not reported, but its occurrence was verified. The defendant was aware of his problems with rage, and in fact he recognized in this case that after he ejaculated, his rage was gone and he had to work himself into another rage to carry out the killing. The defendant himself presented copies of reports of his prior evaluations and institutionalizations. From the defendant's prior criminal history and his extensive history of institutionalization and incarceration, the court could conclude that the defendant posed a substantial risk of committing the same crimes should he be released from custody.

We hold it is not necessary in every guidelines departure case to put on expert testimony concerning future dangerousness. Here, the facts are sufficient for the trial court to conclude future dangerousness from the record, and the burden of proof then switched to the defendant to overcome that evidence. The court

had nothing before it to suggest the defendant would or could change. The defendant has offered nothing that would indicate he would not be dangerous in the future, and he gives no clue what he would or could offer to overcome the evidence of future dangerousness. In fact, defendant does not argue he was unable to adequately oppose the future dangerousness ground for departure.

"Errors which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining do not require reversal when substantial justice has been done." *State v. Bell*, 239 Kan. 229, 235, 718 P.2d 628 (1986). We hold that the error in not giving the defendant sufficient notice of using future dangerousness as a reason to depart upward on defendant's sentence is harmless error.

## XII. UPWARD DEPARTURE

The defendant next argues that the court erred in issuing an upward departure on the aggravated kidnapping, rape, and aggravated criminal sodomy convictions.

K.S.A. 1993 Supp. 21-4721, governing appeals of departure sentences, specifies the issues this court may determine as follows:

"(d) In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, sentence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure:

(1) Are supported by the evidence in the record; and

(2) constitute substantial and compelling reasons for departure.

"(e) In any appeal, the appellate court may review a claim that:

(1) The sentence resulted from partiality, prejudice, oppression or corrupt motive;

(2) the sentencing court erred in either including or excluding recognition of a prior conviction or juvenile adjudication for criminal history scoring purposes; or

(3) the sentencing court erred in ranking the crime severity level of the current crime or in determining the appropriate classification of a prior conviction or juvenile adjudication for criminal history purposes."

A claim that the departure factors are not supported by evidence in the record should be reviewed to determine whether there is substantial evidence supporting the court's findings or whether

the court's findings are clearly erroneous. A claim that the departure factors relied upon by the court do not constitute substantial and compelling reasons for departure is a question of law.

The court gave three reasons for an upward departure at the sentencing hearing: (1) The defendant took advantage of the victim's trust. (2) The defendant inflicted pain and humiliation on the victim; along with this factor was the court's finding that the victim knew she would not be allowed to survive. (3) The defendant would commit the same crimes if he is ever released from custody. In the journal entry, the court gave somewhat different reasons for departure: (1) The defendant's conduct manifested excessive brutality in a manner not normally present in that offense. (2) The victim knew she would not be allowed to live. (3) The defendant took advantage of the victim's trust. Future dangerousness and pain and humiliation per se were not cited in the journal entry but were specified on the record at sentencing. Excessive brutality was specified in the journal entry but not on the record at sentencing. It appears that the "pain and humiliation" factor identified at sentencing was merely restated as "excessive brutality" in the journal entry. If a departure sentence is issued, the court "shall state on the record at the time of sentencing the substantial and compelling reasons for the departure." K.S.A. 1993 Supp. 21-4716(a). The court's comments at the time of sentencing govern as to the reasons for departure.

### Future Dangerousness

K.S.A. 1993 Supp. 21-4716(b)(2) lists several aggravating factors which may be considered in determining whether substantial and compelling reasons for departure exist:

"(A) The victim was particularly vulnerable due to age, infirmity, or reduced physical or mental capacity which was known or should have been known to the offender.

"(B) The defendant's conduct during the commission of the current offense manifested excessive brutality to the victim in a manner not normally present in that offense.

"(C) The offense was motivated entirely or in part by the race, color, religion, ethnicity, national origin or sexual orientation of the victim.

"(D) The offense involved a fiduciary relationship which existed between the defendant and the victim."

This is a nonexclusive list of aggravating factors; other appropriate aggravators may also be considered. K.S.A. 1993 Supp. 21-4716(b)(2). That appropriate aggravators other than those mentioned in K.S.A. 1993 Supp. 21-4716(b)(2) can be considered is of significance in this case. K.S.A. 1993 Supp. 21-4716 was amended in 1994 to add a number of aggravating factors not present in the 1993 statute. L. 1994, ch. 341, § 2. Considering the factors listed in the 1994 statute does not present a question of using a law enacted after defendant's conviction to justify an upward departure from the sentencing guidelines. It is using an appropriate aggravating circumstance not specifically enumerated in the nonexclusive list in the 1993 statute but codified by the legislature in 1994. It does have added credibility because of the legislative adoption in 1994.

The 1994 version of the nonexclusive list of aggravators in 21-4716(b)(2) reads in pertinent part:

"(G) The defendant's current crime of conviction is a crime of extreme sexual violence and the defendant is a predatory sex offender. As used in this subsection:

(i) 'Crime of extreme sexual violence' is a felony limited to the following:

(a) A crime involving a nonconsensual act of sexual intercourse or sodomy with any person;

. . . .

(ii) 'Predatory sex offender' is an offender who has been convicted of a crime of extreme sexual violence as the current crime of conviction and who:

(a) Has one or more prior convictions of any crimes of extreme sexual violence. Any prior conviction used to establish the defendant as a predatory sex offender pursuant to this subsection shall also be counted in determining the criminal history category; or

(b) suffers from a mental condition or personality disorder which makes the offender likely to engage in additional acts constituting crimes of extreme sexual violence.

(iii) 'Mental condition or personality disorder' means an emotional, mental or physical illness, disease, abnormality, disorder, pathology or condition which motivates the person, affects the predisposition or desires of the person, or interferes with the capacity of the person to control impulses to commit crimes of extreme sexual violence."

K.S.A. 1993 Supp. 21-4716(b)(3) places a limit on considering a departure factor which is inherent in the offense:

"If a factual aspect of a crime is a statutory element of the crime or is used to subclassify the crime on the crime severity scale, that aspect of the current crime of conviction may be used as an aggravating or mitigating factor only if the criminal conduct constituting that aspect of the current crime of conviction is significantly different from the usual criminal conduct captured by the aspect of the crime."

Here, the defendant has in the past been convicted of the crimes of nonconsensual rape and nonconsensual sodomy, which are defined by statute as crimes of extreme sexual violence. He is now statutorily defined as a predatory sex offender because he has here been convicted of the same two crimes of extreme sexual violence. K.S.A. 1994 Supp. 21-4716(b)(2)(G)(ii)(a) provides that "[a]ny prior conviction used to establish the defendant as a predatory sex offender pursuant to this subsection shall also be counted in determining the criminal history category."

We believe the legislature, by specifically stating the 1993 statutory list to be *nonexclusive*, intended that other circumstances be considered. The legislature then followed up by adding other specific circumstances which are also nonexclusive and which the defendant clearly and unquestionably fits. He has currently committed not one but two crimes of extreme sexual violence and would now be classified as a "predatory sex offender." That violent sex offender and predatory sex offender became statutory factors in 1994 is not significant. What is significant is the defendant was convicted of nonconsensual rape and nonconsensual sodomy and has currently pleaded guilty to committing the same kind of offenses as the ones previously committed. The trial court did not err in using the prior convictions as substantial and compelling reasons to impose an upward departure from the sentencing guidelines.

## Trust

The defendant argues that the departure factor of trust is inherent in the nature of the offenses. He points out that aggravated kidnapping was alleged to have been committed by force or deception. He reasons that under K.S.A. 1993 Supp. 21-4716(b)(3), trust could not be an aggravating departure factor because deception was an element of the aggravated kidnapping conviction.

This argument ignores that the aggravated kidnapping may also have been committed by force. There was evidence that the victim attempted to get out of the defendant's truck, but he grabbed her and would not let her out. Trust is not inherent in the nature of an aggravated kidnapping.

The defendant also argues that he did not occupy a position of trust with the victim. He points out that "trust" is not listed as a statutory aggravating factor, though a fiduciary relationship is a listed factor. K.S.A. 1993 Supp. 21-4716(b)(2)(D). He clearly did not have a fiduciary relationship with the victim. Even if trust is an appropriate aggravating factor, the defendant reasons that he was a mere acquaintance of the victim and that the trust must be based on a substantial relationship where it is reasonable to rely on such trust.

The State reasons that the defendant and the victim knew each other from work, they attended a birthday party for a mutual friend, and within the context of friendship the defendant was to give the victim a ride home. The State cites *State v. Hamilton*, 348 N.W.2d 112 (Minn. App. 1984), in asking this court to recognize trust as a departure factor as a matter of law. The defendant points out that in *Hamilton*, the defendant was the rape victim's stepfather, clearly a closer and more trusting relationship than that between the defendant and victim in the case at bar.

The defendant cites two cases from the state of Washington which discuss relationships of trust. In *State v. Campas*, 59 Wash. App. 561, 799 P.2d 744 (1990), the defendant met the victim for the first time at a bar, went to the victim's house, left the house, and then returned and killed the victim. The court pointed out that there was no evidence that the victim let the defendant back into her house and concluded that the finding of the departure factor of abuse of trust was clearly erroneous. 59 Wash. App. at 567. In *State v. Strauss*, 54 Wash. App. 408, 773 P.2d 898 (1989), the victim was jogging when she saw the defendant, and she thought he was a security officer or police officer because of his white car and the way he was dressed. The defendant approached the victim and raped her. The court found the evidence insufficient to support a finding that the defendant abused a position

of trust because he was neither a friend nor an acquaintance, and the evidence that he was attempting to pose as a security guard was limited. 54 Wash. App. at 421. Our reading of both cases supports the view, contrary to the defendant's assertion, that a relationship of trust may exist even when the defendant and the victim are mere acquaintances.

Although K.S.A. 1993 Supp. 21-4716(b)(2) lists aggravating departure factors, that statute clearly states that the list is nonexclusive. A departure factor of "trust" is not equivalent to the statutory factor of "fiduciary relationship." The relationship between the defendant and the victim, although not a designated statutory factor, is relevant in determining whether a departure sentence is warranted.

The defendant and the victim were indeed mere acquaintances. There is no evidence that they had an ongoing relationship or that the victim had placed some high degree of trust in the defendant. However, the defendant was supposedly going to give the victim a ride home and she may have entered his truck based on this trust. The degree of trust necessary to warrant departure must be a higher degree of trust than is present here. We think of trust as involving the relationship between a child and a parent, stepparent, or, for example, a church or boy scout leader. Here, the defendant and the victim had no substantial ongoing relationship. The evidence was insufficient to support a finding of abuse of trust as a substantial and compelling reason for departure here. The trial court erred in relying on the aggravating departure factor of abuse of trust under the circumstances of this case.

However, we conclude that other reasons for departure given by the court are supported by the evidence and constitute substantial and compelling reasons for departure. *Cf. State v. Reed*, 256 Kan. 547, Syl. ¶¶ 4, 5, 886 P.2d 854 (1994) (this court can affirm hard 40 sentence even if evidence was insufficient to find one of the aggravating factors cited).

### Pain and Humiliation

The defendant also argues that the departure factor of pain and humiliation was inherent in the offenses. He reasons that the

only pain and humiliation inflicted was by the commission of the crimes of rape and aggravated criminal sodomy. These crimes supplied the requisite bodily harm to make the kidnapping offense aggravated. Therefore, according to the defendant, pain and humiliation could not be considered as departure factors under K.S.A. 1993 Supp. 21-4716(b)(3) because the manner in which the offenses were committed were not significantly different from the criminal conduct captured by the crime.

The defendant again cites cases from the state of Washington to show that conduct must be significantly more serious than that typically involved in the commission of the crime for such conduct to constitute an aggravating departure factor. See *State v. Dunaway*, 109 Wash. 2d 207, 218, 743 P.2d 1237 (1987); *State v. Nordby*, 106 Wash. 2d 514, 519, 723 P.2d 1117 (1986); *State v. Clinton*, 48 Wash. App. 671, 677, 741 P.2d 52 (1987). The State cites *State v. Lee*, 110 Or. App. 528, 823 P.2d 445, *rev. denied* 313 Or. 211 (1992). These cases do not give this court more guidance than that found in K.S.A. 1993 Supp. 21-4716(b)(3).

The State argues that although every victim of aggravated kidnapping, rape, and aggravated criminal sodomy suffers pain and humiliation, this court should recognize pain and humiliation as a departure factor as a matter of law. The State points out that the states of Minnesota and Washington have recognized similar aggravating factors. *State v. Hart*, 477 N.W.2d 732 (Minn. App. 1991) (particular cruelty of multiple penetrations and manner of assault); *State v. Clinton*, 48 Wash. App. at 675 (deliberate cruelty).

The State argues that the defendant subjected the victim to pain and humiliation beyond that normally present in these offenses. The State points to the trial court's finding that the victim knew she would probably not survive the incident. The State also reasons that the defendant foreshadowed his actions by telling the victim that he might be capable of hurting someone. Additionally, the State reasons that the defendant inflicted emotional pain by offering to let the victim out of the truck and then grabbing her when she tried to exit the truck, and by giving her a screwdriver and telling her she should kill him.

There is very little evidence in the record before us of the manner in which the crimes were committed. There was no evidence of particular trauma to the victim.

The trial court concluded that the victim knew she would not survive the incident. This may be the most compelling reason for departure identified by the trial court. There is sufficient evidence in the record to support this conclusion. During the early stages of this incident, Schmidt commented that she thought the defendant was nice and she did not know how he could hurt anybody. He informed her that he may be capable of hurting someone. He prevented Schmidt from getting out of his truck, and he took Schmidt to a deserted area where he raped and sodomized her. Schmidt could reasonably have known she would not survive at the time the kidnapping, rape, and sodomy occurred. Moreover, after the rape and sodomy occurred, the defendant had to work himself into another rage before killing Schmidt. During that time Schmidt was waiting for what one can reasonably conclude she knew was certain death. During the wait she asked that the defendant tell her parents that she loved them—solid proof that she knew of her impending death.

The trial court considered the fact that Schmidt knew she would be killed as an aspect of pain and humiliation. Whether we call it pain and humiliation or excessive brutality or recognize it as a separate unspecified aggravating factor, it is sufficient to be used as a substantial and compelling reason for an upward departure of the sentencing guidelines.

While the trial court considered circumstances in imposing an upward departure of the sentencing guidelines that are not proper to consider, we conclude that the other reasons for departure given by the court are supported by the evidence and constitute substantial and compelling reasons for departure. *Cf. State v. Reed*, 256 Kan. 547, Syl. ¶¶ 4, 5 (this court can affirm hard 40 sentence even if evidence was insufficient to find one of the aggravating factors cited).

## XIII. SAME REASONS

The defendant's final argument on appeal is that the district

court may not rely on the same aggravating factors to issue a departure sentence on more than one crime. He asserts that reliance on the same aggravating factors violates double jeopardy.

This court determined a similar issue adversely to the defendant's position in *State v. Stafford*, 255 Kan. 807, 818-20, 878 P.2d 820 (1994), where we held that consideration of a specific factor in imposing the hard 40 sentence does not preclude consideration of that same factor in making sentences consecutive. The defendant's argument is meritless.

We affirm the imposition of the hard 40 sentence for the defendant's first-degree murder conviction and affirm the upward departure of the sentencing guidelines for the crimes of aggravated kidnapping, rape, and aggravated sodomy.