No. 75,332

STATE OF KANSAS, *Appellee*, v. JOSEPH H. BRADY, IV, *Appellant.*
929 P.2d 132

Opinion filed
December 6, 1996.

*Edward G. Collister*, special appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Jerome A. Gorman*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Joseph H. Brady, IV. He pled guilty to two counts of first-degree murder and was sentenced to two consecutive terms of 40 years, each without the possibility of parole. Brady appeals that sentence.

The victims in this case, William Flynn and Julia L. Wilcox, were both shot in the head with a gun owned by Flynn. The two died in Flynn's half of a duplex owned by Flynn that they resided in together. Brady, the tenant who resided in the other half of the duplex, was charged with their murders. Brady was originally charged with two counts of capital murder for killing two people under K.S.A. 21-3439(a)(6).

Brady entered into a plea agreement to plead guilty to two counts of premeditated first-degree murder. The State agreed to dismiss all other charges filed against Brady. The State agreed not to object at the sentencing hearing to the possibility of concurrent sentences for the crimes and agreed to take no position on the application of "hard 40" sentences for the crimes. However, the State retained the right to advise the court of its sentencing options.

Before the trial court accepted the guilty plea, it requested a factual basis supporting the plea. As per this request, Brady's attorney read an affidavit from Brady outlining his version of the murders. Brady agreed that the affidavit was correct and signed it in open court. The affidavit provided:

"On the early morning of January 7, 1995 I went to 6228 May Lane, Kansas City, Wyandotte County, Kansas. I had been at the Gazebo Bar. I was considering killing myself. I knew that Bill Flynn, my next door neighbor and landlord, had a pistol because I had seen it when I was in his house. Bill Flynn and Julia Wilcox lived together. Their light was on so I knocked at the door. They let me in and gave me a beer. I drank some or all of the beer, walked back toward the bathroom, entered their bedroom and obtained a pistol from the nightstand. I went back in the living room where Mr. Flynn and Ms. Wilcox were waiting and put the gun to my head. They tried to talk me out of it. Holding the gun in my hand I told them to 'Get down on the floor'. Ms. Wilcox was lying on the living room floor face down with her head pointing towards the front door. Mr. Flynn was lying

face down with his feet towards the front door with his head about even with Ms. Wilcox's head. I paced around the room for fifteen minutes while holding the gun with them lying on the floor. I was about ten or fifteen feet away from them when I walked toward them to shoot them. I was standing a step or two away and slightly to the side of Ms. Wilcox's head when I pointed the gun at her head from my standing position and shot her. I then leaned down and shot Mr. Flynn in the top of his head from closer range. There was no argument between us before I fired. I shot them intentionally. I knew and understood what I was doing and I knew and understood what I was doing was wrong. I was not under the influence of legal or illegal drugs. I had been drinking earlier in the evening but I was not intoxicated.

"I then rummaged around the house and found some money and a second pistol. I took Mr. Flynn's truck and went to a friend['s] house where I told one of my friends what I had done. I later returned and moved the bodies to the basement and covered Ms. Wilcox's body so they could not be seen from outside the house."

The trial court accepted Brady's guilty plea.

At the sentencing hearing, the court pointed out that the law required Brady to be sentenced to life for these murders. The only decision for the court to make was whether Brady should be eligible for parole in 25 years or in 40 years (the hard 40 sentence) for each conviction and whether the sentences should run concurrently or consecutively. Brady's attorney asked the court to sentence Brady to life with the possibility of parole in 25 years for each conviction and asked the court to run the sentences concurrently.

Brady presented no evidence other than his affidavit. The State presented no evidence and did nothing inconsistent with the plea agreement. Several family members of the victims made statements.

The trial court found that aggravating circumstances existed as to the nature and method of each murder. Specifically, the court found that the aggravating circumstance listed under K.S.A. 21-4636(b) existed in connection with each murder because Brady "knowingly or purposely killed or created a great risk of death to more than one person" when he committed each murder. The court also found that the aggravating circumstance listed under K.S.A. 21-4636(f) existed as to each murder because Brady committed both murders in "an especially heinous, atrocious, or cruel manner." The court found that one mitigating circumstance existed

in connection with both crimes because Brady had no significant history of prior criminal activity. K.S.A. 21-4637(a). However, the court found that the aggravating circumstances outweighed the mitigating circumstance for both murders. Thus, the trial court sentenced Brady to life imprisonment without the eligibility of parole for 40 years for each of the first-degree murder convictions. The court also ordered the two hard 40 sentences to run consecutive to each other, not concurrently.

K.S.A. 21-4638 authorizes a hard 40 sentence. Under a hard 40 sentence, a defendant is sentenced to life in prison and is not eligible for parole or good time credits for 40 years. K.S.A. 21-4638. K.S.A. 21-4635 outlines who qualifies for a hard 40 sentence and how a trial judge determines which defendants should receive a hard 40 sentence. This statute provides:

"(a) . . . [I]f a defendant is convicted of murder in the first degree based upon the finding of premeditated murder, the court shall determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years or sentenced as otherwise provided by law.

. . . .

"(c) If the court finds that one or more of the aggravating circumstances enumerated in K.S.A. 21-4636 and amendments thereto exist and, further, that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant shall be sentenced pursuant to K.S.A. 21-4638 and amendments thereto; otherwise, the defendant shall be sentenced as provided by law."

The aggravating circumstances are found in K.S.A. 21-4636, which provides in pertinent part:

"Aggravating circumstances shall be limited to the following:

. . . .

"(b) The defendant knowingly or purposely killed or created a great risk of death to more than one person.

. . . .

"(f) The defendant committed the crime in an especially heinous, atrocious, or cruel manner."

The mitigating circumstances are found in K.S.A. 21-4637, which states in pertinent part:

"Mitigating circumstances shall include, but are not limited to, the following:
"(a) The defendant has no significant history of prior criminal activity."

The trial court found the aggravating circumstance under K.S.A. 21-4636(b)—that Brady knowingly or purposely killed *or* created a great risk of death to more than one person—applied to *both* first-degree murder convictions. Thus, the court found that both murders were of the nature deserving a hard 40 sentence. Brady challenges this, contending that he has been punished twice for each killing.

The question of whether the aggravating circumstance under 21-4636(b) can be applied to the first-degree murder conviction for each person Brady knowingly or purposely killed in the same transaction without violating double jeopardy is an interpretation of a statute and the constitution. Interpretation of a statute and the constitution is a question of law. An appellate court's standard of review of a question of law is an unlimited, de novo review; thus, this court is not bound by the decision of the district court. *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993); *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

Brady raises a question about whether this aggravating factor under K.S.A. 21-4636(b) is conjunctive or disjunctive. Based on the use of the word "or" in K.S.A. 21-4636(b), we hold that the factor is disjunctive. Thus, a trial court may impose a hard 40 sentence for a first-degree murder conviction if the defendant knowingly or purposely killed more than one person in the course of the charged murder, or if the defendant knowingly or purposely created a great risk of death to more than one person in the course of the charged murder. The portion of the factor which is at issue here is the first portion. Here, the trial court enhanced both murder convictions because Brady knowingly or purposely killed more than one person in the course of or in connection with each murder.

Brady contends that he is being punished twice for the same conduct—a "killing spree" in which he knowingly or purposely killed more than one person. Brady asserts that he was sentenced to life for the murder of William Flynn and received a sentence enhancement (no parole for 40 years) because this murder occurred in a killing spree. Brady also argues that he was sentenced

to life for the murder of Julia Wilcox and received a separate sentence enhancement (no parole for 40 years) because this murder occurred in a killing spree, the same killing spree in which Flynn was murdered. Thus, Brady contends that he was punished twice for the same killing spree conduct, which is a violation of double jeopardy. See *State v. Mertz*, 258 Kan. 745, 749, 907 P.2d 847 (1995). He argues that the court erred by using the aggravating factor of knowingly or purposely killing more than one person twice, to enhance each murder conviction, even though the murders occurred in the same course of conduct. Brady contends that the use of the aggravating factor in this manner is improper, both under legislative intent and as a violation of double jeopardy.

According to Brady, the aggravating circumstance in 21-4636(b) should be used if a defendant is charged with and convicted of only one murder. If a defendant is not charged with the other killings or risks of death that the defendant caused while committing this one murder, then the defendant's sentence for the one murder should be enhanced, based on these other uncharged acts. Or, if a defendant is charged with and convicted of two murders, then Brady contends that the aggravating circumstance in 21-4636(b) should only be used on one of the murders. In this way, the defendant is punished once for each individual killing and punished once, through the one hard 40 sentence, for his additional bad conduct in killing more than one person at once or by going on a killing spree.

Brady contends that, based on these two killings, he could not have been charged with two counts of capital murder under 21-3439(a)(6), which requires the intentional and premeditated killing of more than one person as a part of the same act or transaction. According to Brady, the death of two victims was a necessary element for *one* count of capital murder under 21-3439(a)(6) and could not be used to charge a second count of capital murder without resulting in a multiplicious charge. Since he could not have been convicted of two counts of capital murder under 21-3439(a)(6), based on the killings of the same two victims, Brady contends that he should not have received two hard 40 sentences

under the aggravating factor of 21-4636(b), based on the same two killings.

The State takes issue with Brady's analogy between capital murder prosecutions and hard 40 sentences. While these statutes often use identical language, the State asserts that they do not present analogous concerns. In a capital murder charge, under 21-3439(a)(6), one of the elements of the crime itself is that two or more deaths occurred. Thus, the State contends only one charge could be based on the two deaths. Otherwise, the same two deaths would be elements in two different crimes. The State asserts that it would need to prove each death twice, beyond a reasonable doubt, to prove the elements of two capital murder charges. According to the State, this is not the case with a hard 40 sentence. Under 21-4636(b), the killing of two or more people is a sentencing factor, not an element of the crime as with a capital murder charge. See K.S.A. 21-3439(a)(6). Thus, each killing is used once as an element in the first-degree murder charge, and as an aggravating factor under 21-4636(b)—that Brady knowingly or purposely killed more than one person. This factor is used twice to enhance each murder conviction, even though the murders occurred in the same course of conduct. The State points out that sentencing is a function of the legislature. As such, the legislature can choose to punish a defendant for life for murdering a victim and impose an additional punishment on the defendant, by making the defendant ineligible for parole for 40 years, because the defendant killed another person in the same act as this murder, even though the defendant had already been convicted and sentenced separately for the second killing. Thus, according to the State, the trial court did not err in following the legislature's direction and sentencing Brady to two consecutive hard 40 sentences. We do not take a position on the argument concerning capital cases as that issue is not before us.

Further, the State contends that any other interpretation of this sentencing factor under 21-4636(b) would result in the inequitable application of criminal laws. Under Brady's theory, he should have received only one hard 40 sentence at most. Brady claims that he should have been convicted separately for each murder, sentenced

to life for each murder, and then given one hard 40 sentence enhancement for the fact that he killed two people in one setting. Under this scenario, Brady should have received a hard 40 sentence for the first murder conviction and a hard 25 for the second murder conviction, even though both killings occurred at the same time and in the same manner. The State contends that it is inequitable to value one person's life more than another by sentencing Brady longer for the murder of one victim than for the identical murder of the other victim. Thus, the State contends the hard 40 sentence should be allowed to enhance both murder convictions.

There are several circumstances in which the legislature does not allow the same factor to be used as both an element in a crime and as a sentence enhancement factor in the same crime, or does not allow a factor to be used twice as a sentence enhancement, or does not allow a crime which occurred in the same transaction as the charged crime to count as criminal history in the sentencing of the charged crime. For instance, under the Habitual Criminal Act, the legislature provided for an enhancement of the current sentence if the defendant had prior felony convictions, but the defendant's prior convictions could not be used to enhance the current sentence if the prior convictions were a necessary element of the current crime. K.S.A. 21-4504(e)(1). Further, a defendant's presumptive sentence for a conviction under the sentencing guidelines is determined in part by a defendant's criminal history. However, the legislature made it clear that a prior conviction shall not be counted in determining a defendant's criminal history if the prior conviction enhances the severity level of the current crime, or if the prior conviction elevates the classification of the current crime from a misdemeanor to a felony, or if the prior conviction is an element of the present crime of conviction. K.S.A. 21-4710(d)(11). The legislature also prohibited the State from counting as a prior conviction, for sentencing purposes in the current case, any conviction obtained in the current case which was brought as a separate count in the same information and joined for trial, even if this crime actually occurred before the current offense. K.S.A. 21-4710(a). Finally, the legislature specified that

"[i]f a factual aspect of a crime is a statutory element of a crime or is used to subclassify the crime on the severity scale, that aspect of the current crime of conviction may be used as an aggravating or mitigating factor [to depart from a presumptive guidelines sentence] only if the criminal conduct constituting that aspect of the current crime of conviction is significantly different from the usual criminal conduct captured by the aspect of the crime." K.S.A. 21-4716(b)(3).

Here, Brady killed two people. The trial court used the fact that Brady knowingly and purposely killed more than one person as a sentence enhancement factor in both first-degree murder convictions. The trial court did this even though the only other death which occurred in connection with each murder was the death of the one other victim and Brady was separately convicted of murder for the death of this other victim. The legislature did not specifically prohibit the use of this factor in this way. If the legislature had wished to prohibit the use of the factor in this way, it certainly knew how to do so. This is demonstrated by the list of previous restrictions the legislature has made on the use of certain factors as elements of a crime or as sentence enhancement factors. Since the legislature did not specifically prohibit the use of this factor twice, once for each murder conviction, then the legislature must have intended to allow the aggravating factor to be used in such manner.

This same analysis was relied upon in *State v. Stafford*, 255 Kan. 807, 878 P.2d 820 (1994). In *Stafford*, the defendant was convicted of, *inter alia*, two counts of first-degree murder for the killing of two people during one course of conduct. The defendant was sentenced to two consecutive hard 40 sentences—one sentence for each murder conviction. The jury recommended the hard 40 sentence for each murder, in part, because it found the aggravating circumstance—that the defendant killed more than one person—existed in each case. The trial court accepted the recommendation and, just as in this case, the defendant was sentenced to life for each killing. Then each sentence was enhanced based, in part, on the aggravating factor that defendant killed more than one person, even though the only other person killed in connection with each murder was the second victim who was killed in the same course of conduct and the defendant was separately convicted of this sec-

ond murder. As such, the defendant was sentenced to two hard 40 sentences, one for each murder. The defendant in *Stafford* did not challenge the application of the aggravating factor—that he killed more than one person—to both convictions, as Brady does here. However, the trial court in *Stafford* also relied, in part, on this aggravating factor—that the defendant killed more than one person—to find that the two hard 40 sentences should run consecutively, not concurrently. This is what the defendant challenged in *Stafford*. The defendant contended that each of his sentences was enhanced twice, once because he received the hard 40 sentences and once because the sentences were to run consecutively, based on the same aggravating factor—that he knowingly and purposely killed more than one person.

This court rejected the defendant's argument, stating: "[R]elying upon a particular aggravating circumstance in imposing consecutive sentences when that circumstance has already been relied upon in imposing the hard 40 sentence, even if that circumstance is the sole reason for imposing consecutive sentences, is not inappropriate." 255 Kan. at 818.

In reaching this conclusion, this court made the following analysis:

"The Kansas Legislature has indicated when it does not want elements of a crime also used to enhance the sentence for the crime involved. . . . Thus, if the legislature had intended to preclude an aggravating factor relied upon by the jury in recommending the hard 40 sentence from also being relied upon by the trial judge as a factor in imposing sentence or in determining whether sentences imposed should run concurrently or consecutively, the legislature would have so stated." 255 Kan. at 819.

Thus, the *Stafford* court allowed the same aggravating factor—that defendant knowingly or purposely killed more than one person—to enhance two convictions for murder. This was so, even though the only other killing connected with each murder was the killing of the one other victim, which occurred in the same course of conduct and of which the defendant was separately convicted. This court also allowed this same aggravating factor to enhance the sentences by imposing them consecutively, not concurrently. The

court found that the use of the factor in this way was appropriate under legislative intent and did not violate double jeopardy.

The only case to cite *Stafford* concerning this issue is *State v. Gideon*, 257 Kan. 591, 894 P.2d 850 (1995). In *Gideon*, the defendant was convicted of premeditated first-degree murder, aggravated kidnapping, aggravated criminal sodomy, and rape, all of which arose out of the same course of conduct. The defendant was sentenced to a hard 40 sentence for the first-degree murder conviction, to 408 months for the aggravated kidnapping conviction (an upward durational departure from the sentencing guidelines of 204 months), 154 months for aggravated criminal sodomy (an upward durational departure from the sentencing guidelines of 77 months), and 154 months for rape (an upward durational departure from the sentencing guidelines of 77 months), all to be served consecutively.

The trial court based all three departure sentences on the same aggravating factors—the defendant's prior convictions, the defendant's future dangerousness, and the excessive brutality of the crimes. The defendant argued that the trial court improperly relied on the same aggravating factors in imposing three different departure sentences for three different crimes which all occurred in the same course of conduct. According to the defendant, this violated double jeopardy. If the State wished to punish him for his excessive brutality, the defendant argued, it should only be able to do so once, not three times, because the same excessive brutality was used to commit all three crimes which occurred in the same course of conduct.

Citing *Stafford*, this court found the defendant's argument meritless and affirmed all the departure sentences. This court did not find it improper or a violation of double jeopardy to use the same aggravating factors to enhance the sentences for more than one crime, even though the crimes all occurred in the same course of conduct and demonstrated the aggravating factor at the same time. 257 Kan. at 630.

Thus, in *Stafford*, the trial court properly used the same aggravating factor for two different purposes without violating legislative intent or creating double jeopardy. In *Gideon*, the trial court prop-

erly used the same aggravating factors to enhance the sentences of three different crimes, which occurred in the same course of conduct, without violating legislative intent or double jeopardy. The trial court did the same thing here. The court used the same sentencing factor—knowingly or purposely killing more than one person—to enhance two different crimes which occurred in the same course of conduct. Thus, under *Stafford* and *Gideon*, this was not a violation of legislative intent or double jeopardy.

Brady did not receive multiple punishments for the killing of Flynn and Wilcox. Instead, Brady received a life sentence for the murder of Wilcox, which was enhanced to a hard 40 sentence because the murder occurred in the midst of a killing spree, making the murder deserving of extra punishment. Brady also received one punishment for the murder of Flynn, a life sentence which was enhanced to a hard 40 sentence because the murder occurred in the midst of a killing spree, making the murder deserving of extra punishment. The fact that two enhancements were imposed for the same killing spree is irrelevant. Each murder was worse and deserving of more punishment because it took place in the midst of a killing spree.

If the legislature chooses to alter the way in which this aggravating factor is used, it of course may do so. The trial court's application of the same aggravating factor—that Brady knowingly or purposely killed more than one person—to both first-degree murder sentences was not in error, even though both murders occurred in the same course of conduct and Brady was separately convicted for each murder.

In imposing the two hard 40 sentences, the trial court also found that a second aggravating factor existed for each first-degree murder conviction—that Brady committed the crime in an especially heinous, atrocious, or cruel manner. K.S.A. 21-4636(f).

Brady takes issue with the trial court's finding that this second aggravating factor existed and applied to both first-degree murder convictions. Brady contends that the evidence is insufficient as a matter of law to support the court's finding that both murders were committed in a particularly heinous, atrocious, or cruel manner.

"When the sufficiency of the evidence is challenged for establishing the existence of an aggravating circumstance in a hard 40 sentencing proceeding, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, a rational factfinder could have found the existence of the aggravating circumstance beyond a reasonable doubt." *State v. Alford*, 257 Kan. 830, 837-38, 896 P.2d 1059 (1995).

"The term 'heinous' means extremely wicked or shockingly evil; 'atrocious' means outrageously wicked and vile; and 'cruel' means pitiless or designed to inflict a high degree of pain, utter indifference to, or enjoyment of the sufferings of others." PIK Crim. 3d 56.01-B. "All murders are heinous, atrocious, and cruel. The legislature, by using the phrase 'in a particularly heinous, atrocious, or cruel manner,' meant that the heinous, atrocious, or cruel manner must be in a special or unusual degree, to an extent greater than in other cases." *State v. Cook*, 259 Kan. 370, 403, 913 P.2d 97 (1996). "Otherwise, the legislature would have mandated the hard 40 sentence in all first-degree murder cases." *State v. Willis*, 254 Kan. 119, 129, 864 P.2d 1198 (1993).

In *State v. Bailey*, 251 Kan. 156, 834 P.2d 342 (1992), the defendant was convicted of first-degree murder and received a hard 40 sentence. The victim was stomped to death, sustaining major trauma to all parts of her body. The evidence indicated that she was assaulted for a lengthy period of time and died a slow death. Based on these facts, this court affirmed the jury's finding that the murder was committed in an especially heinous, atrocious, or cruel manner. 251 Kan. at 174-75.

In *Gideon*, 257 Kan. 591, the defendant took the victim to a deserted area in the country, forced her to stand naked in a field, and told her one of them had to die. The defendant then strangled the victim. The evidence indicated that the victim knew she was going to die before being strangled. The defendant was convicted of premeditated first-degree murder and received the hard 40 sentence. Based on the above facts, this court affirmed the trial court's finding that the murder was committed in an especially heinous, atrocious, or cruel manner. 257 Kan. at 612-13.

The legislature has determined that the general rule in Kansas is that shooting deaths are not typically committed in a heinous,

atrocious, or cruel manner. *Cook*, 259 Kan. at 402. For instance, in *Cook*, the defendant shot the victim, who was in bed, twice, once in the chest and once in the back. The defendant was convicted of murder and received a hard 40 sentence. Since the State's evidence was based on mere speculation, this court could not find that the shooting was committed "in a special or unusual degree [or] to an extent greater than in other cases." *Cook*, 259 Kan. at 403. Thus, this court held that a rational factfinder could not find, beyond a reasonable doubt, that the murder was committed in a particularly heinous, atrocious, or cruel manner. As such, this court found that the aggravating factor did not exist and set the defendant's hard 40 sentence aside, remanding the case for resentencing. 259 Kan. at 402-03.

In *State v. Reed*, 256 Kan. 547, 886 P.2d 854 (1994), the defendant was convicted of murder and received a hard 40 sentence. The victim was killed by a gunshot wound in the back of her head. She bled for approximately 10 minutes before she died. The victim was also stabbed in the neck and decapitated. This court held that there was no way to determine whether the stabbing and decapitation occurred before or after the victim was already dead. Thus, assuming that the victim died from the gunshot wound before she was stabbed and decapitated, this court held that the murder was not committed in an especially heinous, atrocious, or cruel manner. 256 Kan. at 563. However, the jury found that another aggravating circumstance also existed because the defendant committed the murder to avoid prosecution. This court affirmed that finding and found that this one aggravating circumstance continued to outweigh any mitigating circumstances. Thus, we upheld the defendant's hard 40 sentence. 256 Kan. at 566.

An exception to the general rule that shooting deaths are not committed in an especially heinous, atrocious, or cruel manner is *State v. Alford*, 257 Kan. 830. In *Alford*, the defendant was convicted of first-degree murder, *inter alia*, and received the hard 40 sentence.

"The record reveals that the defendant entered the kitchen [of the restaurant where the victim worked] waving his gun. He chased [the victim] into the lobby of the restaurant and shot her twice. He then forced [the victim] back into the

kitchen and when she attempted to flee, shot her again. Finally, as she was barely moving yet still trying to escape, he dragged her around the corner of the kitchen, all the while attempting to fire the gun which had jammed. After a long series of clicks from the jammed gun, he administered the final two bullets." 257 Kan. at 838.

Based on this evidence, this court affirmed the trial court's finding that the murder was committed in an especially heinous, atrocious, or cruel manner, despite the fact that the victim was killed by gunshots. 257 Kan. at 837-38.

In this case, Brady went to the residence of the two victims. Brady told the victims to "[g]et down on the floor." Both victims lay face down on the floor with their heads close to each other. Brady paced the room for about 15 minutes, still holding the gun. Then he walked toward the victims, pointed the gun at Julia Wilcox's head from his standing position and shot her. It appears from Wilcox's daughter's testimony that Julia Wilcox died a slow, painful death. After shooting Wilcox, Brady leaned down and shot William Flynn in the top of the head from a closer range. Flynn's head was beside Wilcox's head. Thus, Flynn knew for several seconds that he was going to be shot in the head. Both victims were forced to lie face down on the floor for some 15 minutes not knowing what was going to happen. After shooting the victims, Brady did not seek help. Instead, he dragged the victims to the basement.

The State points out that Brady never told the victims what was going to happen; thus, they could only wonder as to their ultimate fate. The victims knew Brady had a gun in his hand as he paced the floor. Further, Flynn must have heard and saw the shooting of Wilcox. The State asserts that it "can think of no more serious of a situation involving mental anguish than for two persons who live together to be lying near each other . . . face down in silence awaiting their fate." The State argues that this last 15 minutes of the victims' lives, while Brady paced, imposed serious mental anguish on the victims. Thus, the State asserts this murder was committed in an especially heinous, atrocious, or cruel manner.

After viewing all of the evidence in the light most favorable to the prosecution, a rational factfinder could have found the existence of the aggravating circumstance in 21-4636(f) beyond a rea-

sonable doubt. The trial court did not err in finding these murders were committed in an especially heinous, atrocious, or cruel manner as required by K.S.A. 21-4636(f). Since the trial court did not err in finding that these two aggravating factors applied to both murder convictions, and since Brady does not challenge the trial court's finding that the aggravating factors outweighed the mitigating factor as to each crime, the trial court's imposition of two consecutive hard 40 sentences was not in error.

Affirmed.