(973 P.2d 213)

No. 80,301

LARRY J. RUBLE, *Appellee*, v. KANSAS DEPARTMENT OF REVENUE, *Appellant.*

Opinion filed February 5, 1999.

*James G. Keller*, Kansas Department of Revenue, for appellant.

*Dennis J. Keenan* and *Martin J. Keenan*, of Keenan & Boeckman Law Firm, P.A., of Great Bend, for appellee.

Before ROYSE, P.J., WAHL, S.J., and ROBERT J. SCHMISSEUR, District Judge, assigned.

SCHMISSEUR, J.: The Kansas Department of Revenue (KDR) appeals from the district court's order reversing the 330-day restriction on Larry J. Ruble's driving privileges for failing a breath alcohol test. The KDR argues that the court erred in finding that the notices given to Ruble were not adequate because they did not mention the 330-day restriction of driving privileges. Ruble cross-appeals, arguing that the court erred in failing to consider the "margin of error" for his breath sample.

The facts are not substantially in dispute and are highly summarized. On February 23, 1995, Ruble was placed under arrest for driving under the influence (DUI). At the law enforcement center, Ruble was asked to take a DUI breath test. Officer Fleming provided Ruble a written and oral implied consent advisory as required under K.S.A. 1994 Supp. 8-1001(f). However, the officer did not

advise Ruble that his driving privileges would be restricted for 330 days following the 30-day suspension period if he failed the test. Ruble agreed to take the breath test which revealed that his alcohol concentration was .087.

Upon Ruble's request, an administrative hearing was held on May 31, 1995. The administrative hearing officer suspended Ruble's driving privileges for 30 days with a 330-day restriction. On review to the district court, the court approved the 30-day suspension but rejected the 330-day restriction. The court found that Ruble should have been notified of the 330-day restriction before taking the breath test even though such a notice is not required by K.S.A. 1994 Supp. 8-1001(f)(1).

The first issue on appeal is whether the district court erred in reversing the 330-day restriction against Ruble because he did not receive adequate notice of the restriction.

The KDR argues the district court erred in requiring an additional notice not required by K.S.A. 1994 Supp. 8-1001(f)(1). The KDR maintains that the legislature only intended to notify a driver being tested for the person's alcohol concentration that his or her driving privileges will be suspended for failing the breath test.

The district court's interpretation of a statute raises a question of law. An appellate court's scope of review of questions of law is unlimited. *State v. Brady*, 261 Kan. 109, 113, 929 P.2d 132 (1996).

"It is the function of a court to interpret a statute to give it the effect intended by the legislature." *In re Application of Zivanovic*, 261 Kan. 191, Syl. ¶ 1, 929 P.2d 1377 (1996). "When a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *State v. Lawson*, 261 Kan. 964, 966, 933 P.2d 684 (1997).

K.S.A. 8-1001 *et seq.*, the implied consent law, is the statute which authorizes the KDR to suspend a person's driver's license. K.S.A. 1994 Supp. 8-1001(a) provides that any person who operates a car in Kansas has given consent to submit to a chemical test to determine the presence of alcohol. Before a police officer conducts a test, the officer must inform the driver, orally and in writing, with

certain specified warnings. K.S.A. 1994 Supp. 8-1001(f)(1). If the driver consents to the test and the person's blood alcohol concentration registers .08 or more, the division of motor vehicles shall suspend the person's driving privileges for 30 days and then if it is a first occurrence, restrict the person's driving privileges for an additional 330 days. K.S.A. 1994 Supp. 8-1001(f)(1)(E); K.S.A. 1994 Supp. 8-1014(b)(1).

Under K.S.A. 1994 Supp. 8-1001(f)(1)(E), an officer must inform the driver that if he or she consents to the test and the person's blood alcohol concentration registers .08 or more, then his or her driving privileges will be suspended for at least 30 days. However, K.S.A. 1994 Supp. 8-1001 does not require an officer to inform the driver that his or her driving privileges can also be restricted for another 330 days for failing the test.

In *State v. Kristek*, 14 Kan App. 2d 77, 78-80, 781 P.2d 1113 (1989), this court reversed a lower court's finding requiring an officer to make a written record of whether a driver being tested for alcohol concentration requests an independent alcohol analysis. The court noted that the lower court's decision imposed an additional requirement than those set out in K.S.A. 1988 Supp. 8-1001. This court emphasized that Kansas courts have been reluctant to add requirements that are not contained in 8-1001. 14 Kan. App. 2d at 79. The court found that 8-1001(f) includes all the requirements that the legislature intended to impose on law enforcement officers. This court concluded that, in the absence of the constitutional reason, it did not have authority to impose an additional requirement under 8-1001. 14 Kan. App. 2d at 80; see also *Ramirez v. Kansas Dept. of Revenue*, 13 Kan. App. 2d 332, 336, 770 P.2d 490, *rev. denied* 244 Kan. 738 (1989) (reversing a lower court's finding that an officer should inform a driver of his right to take an alcohol content test after initially refusing the test).

Ruble maintains that a person has a right to know of the significant consequences which would have a major impact on their decision to take a breathalyzer. He maintains the 330-day restriction is such a consequence. However, the 330-day restriction of driving privileges is not a punishment. The restriction is part of the civil regulatory scheme that fosters public safety by restricting the driv-

ing privileges of a person who has exhibited dangerous behavior. See *State v. Mertz*, 258 Kan. 745, 758-59, 907 P.2d 847 (1995) (civil suspension of driving privileges is not punishment for purposes of double jeopardy).

The Kansas Legislature has set out the specific notices required when a driver is requested to submit to a chemical test to determine the presence of alcohol under 8-1001(f). These notices were properly given in the present case. Under the reasoning in *Kristek*, the court does not have the authority to judicially amend the statute to add a further requirement. Thus, the district court erred in finding that Ruble should have received notice of the 330-day restriction.

In his cross-appeal, Ruble argues that the court erred in failing to apply the breath test machine's "margin of error" in his favor. In rejecting Ruble's contention, the district court found that the legislature did not intend for a court in a proceeding under K.S.A. 1994 Supp. 8-1002(h)(2) to consider the margin of error in determining whether a person fails a breath alcohol test.

As noted, the KDR is authorized to suspend a license to drive if "the test results show an alcohol concentration of .08 or greater." K.S.A. 1994 Supp. 8-1001(f)(1)(E). Where an officer certifies that the driver failed the chemical test, the scope of the review hearing is limited to, among other things, whether "the test result determined that the person had an alcohol concentration of .08 or greater in such person's blood or breath." K.S.A. 1994 Supp. 8-1002(h)(2)(G).

Ruble refers this court to *Haynes v. State, Dept. of Public Safety*, 865 P.2d 753, 756 (Alaska 1993), where the Alaska Supreme Court addressed a similar issue. In *Haynes*, the Alaska court found that a driver's due process rights were violated by the hearing officer's failure to apply the margin of error inherent in the chemical breath test in favor of the driver. However, *Haynes* involved a constitutional challenge that was properly raised before the court. In contrast, Ruble is apparently raising his alleged constitutional argument for the first time on appeal. It is well settled that such assertions are not properly before this court for review. See *In re M.M.L.*, 258 Kan. 254, 261, 900 P.2d 813 (1995).

In the present case, the officer performed a control test on the machine by introducing an air sample known to contain .08 alcohol immediately before testing Ruble. The control test produced a reading of .072, or .008 lower than the actual alcohol level present in the control sample. Ruble's alcohol concentration was tested at .087.

Ruble's argument basically concerns whether the evidence was sufficient to support this suspension because his alcohol content was .087 and the "margin of error" was plus or minus .008. Ruble appears to argue that the district court was compelled, in view of the .008 margin of error, to find that unless the test showed a blood alcohol level that was .008 higher than .08, the KDR had not carried its burden of proof.

Although no Kansas case addresses the issue that Ruble raises, several cases from other states have considered this issue. In *Nugent v. Iowa Dept. of Transp.*, 390 N.W.2d 125 (Iowa 1986), the driver argued that since the blood testing device had an inherent 5 percent margin of error, his blood alcohol concentration could have been as low as 0.097 and, thus, below the statutory minimum at that time. 390 N.W.2d at 127-28. The Iowa Supreme Court rejected the driver's argument because the Iowa driver's license suspension statute did not on its face require consideration of the inherent margin of error in the test. 390 N.W.2d at 128. Other states have followed this reasoning when reviewing their own license revocation/suspension statutes. See *Wieseler v. Prins*, 167 Ariz. 223, 225-26, 805 P.2d 1044 (Ct. App. 1990), *rev. denied* March 5, 1991 (license revocation statute does not require consideration of margin of error before determining a person's blood alcohol level); *Hrncir v. Commissioner of Public Safety*, 370 N.W.2d 444, 445 (Minn. App. 1985) ("The [Minnesota implied consent] statute refers to test results showing a blood alcohol concentration of .10 or more, not .10 plus or minus a margin or error.").

K.S.A. 1994 Supp. 8-1001(f)(1)(E) and K.S.A. 1994 Supp. 8-1002(a)(2)(D) require the driver's test results to show that his or her blood alcohol concentration is .08 or more before that person's driving privileges are subject to suspension. See K.S.A. 1994 Supp.

8-1014(b) The statutes do not require the test result to pass the threshold alcohol limit of .08 within a margin of error. If the legislature had intended for the margin of error to be a factor, it could have easily included such a requirement in the statutes. See, *e.g.*, Iowa Code § 321J.12 (1997 Supp.) (Iowa's license revocation statute was subsequently amended after *Nugent* to require the hearing officer to consider the established margin of error inherent in the testing device utilized); *Lawson*, 261 Kan. at 966.

The record in this case reveals that the Kansas Department of Health and Environment had certified the Intoxilyzer and the officer operating it. The officer further testified that he followed the protocol for operating the machine and that the machine appeared to be working properly when he administered the test to Ruble. Ruble's test results exceeded the .08 standard. Accordingly, the record contains sufficient evidence to support the district court's findings.

The rulings of the district court are affirmed in part and reversed in part. The matter is remanded with directions to reinstate the 330-day restriction administratively applied.