NOT DESIGNATED FOR PUBLICATION

No. 120,840

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEROME REILLY,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed May 1, 2020. Affirmed in part, vacated in part, and remanded with directions.

*Jay Norton*, of Norton Hare LLC, of Overland Park, for appellant.

*Marissa Jones*, of Legal Services, Kansas Department of Revenue, for appellee.

Before HILL, P.J., BUSER and BRUNS, JJ.

PER CURIAM: Jerome Reilly challenges the district court's decision affirming the administrative suspension of his driving privileges by the Kansas Department of Revenue (KDOR) after his arrest for driving under the influence of alcohol. On appeal, Reilly contends that the implied consent advisories on the DC-70 form read and provided to him were unconstitutionally coercive. He also contends the DC-70 form did not substantially comply with Kansas law. In addition, Reilly contends that the failure of the implied consent advisories to inform him of the consequence of driving with an ignition interlock device violates due process. Finally, Reilly contends that the nonrefundable $50 application fee imposed under K.S.A. 2016 Supp. 8-1020(d)(2) is unconstitutional.

1

Following precedent established by the Kansas Supreme Court, we vacate the $50 application fee imposed on Reilly and we remand to the KDOR with directions to refund this amount to him. However, we affirm the district court's decision to uphold the administrative suspension in all other respects.

FACTS

On the evening of November 12, 2016, Major Jonathan Keys of the Johnson County Sheriff's Office arrested Reilly on suspicion of driving under the influence following a traffic stop for speeding on Highway 10 near DeSoto. The arresting officer took Reilly to the central booking facility. Major Keys then provided Reilly with the oral and written notices required by the Kansas implied consent law. In doing so, Major Keys read from the current DC-70 implied consent advisory form that the Office of the Attorney General revised on February 26, 2016.

The revised DC-70 included the following advisories:

"1. Kansas law (K.S.A. 8-1001) requires you to submit to and complete one or more tests of breath, blood or urine to determine if you are under the influence of alcohol or drugs or both.

"2. You have no constitutional right to consult with an attorney regarding whether to consent to testing.

"3. If you **refuse** to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, your driving privileges will be suspended for 1 year.

"4. If you submit to a breath or blood test requested by a law enforcement officer and produce a completed test result of .15 or greater, your driving privileges will be suspended for 1 year.

"5. If you submit to a breath or blood test requested by a law enforcement officer and produce a completed test result of .08 or greater, but less than .15, the length of the suspension will depend upon whether you have a prior occurrence. A prior occurrence is

2

a prior test refusal, test failure or conviction or diversion for an alcohol related conviction as defined in K.S.A. 8-1013, and amendments thereto, or any combination thereof, whether before, on or after July 1, 2011.

"6. If you fail a test with an alcohol content of .08 or greater, but less than .15, **and do not have any prior occurrences**, your driving privileges would be suspended for 30 days.

"7. **If you have a prior occurrence** and fail a test with an alcohol content of .08 or greater, but less than .15, your driving privileges will be suspended for one year.

"8. Refusal to submit to testing may be used against you at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both.

"9. The results of the testing may be used against you at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both.

"10. After the completion of testing, you have the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities willing to conduct such testing."

After being given the implied consent advisories, Reilly consented to an evidentiary breath-alcohol test. The test results revealed that his blood-alcohol content was above the legal limit. As a result, Major Keys informed Reilly that his driving privileges were administratively suspended and gave him a copy of a DC-27 certification and notice of suspension form.

Reilly timely appealed his administrative suspension to the KDOR under K.S.A. 2016 Supp. 8-1020(a)(1) to challenge the suspension of his driver's license. As part of the appeal application process, Reilly paid a $50 administrative fee to KDOR as required by K.S.A. 2016 Supp. 8-1020(d)(2). Ultimately, the KDOR affirmed the administrative suspension of Reilly's driver's license and he sought judicial review in the district court.

On December 29, 2017, the district court held an evidentiary hearing. At the hearing, Major Keys testified consistent with his DC-27 certification. No other witnesses

3

were called by the parties. However, four exhibits were admitted into evidence, including the DC-27, two traffic citations, and the in-car video of the traffic stop. Following the hearing, the parties filed written submissions setting forth their respective arguments. In a comprehensive 30-page written decision issued on January 24, 2019, the district court upheld the KDOR's suspension of Reilly's driver's license. Thereafter, Reilly timely appealed to this court.

ANALYSIS

On appeal, Reilly raises four issues. First, he contends that the DC-70 implied consent advisory form read and provided to him by the arresting officer was unconstitutionally coercive. Second, he contends that the advisories in the DC-70 form did not substantially comply with the provisions of K.S.A. 2016 Supp. 8-1001(k). Third, he contends that the failure of the DC-70 form to advise of the length of restriction to an ignition interlock device violates due process. Fourth, he contends that the $50 application fee charged by the KDOR was unconstitutional. In response, the KDOR denies the first three contentions and concedes the fourth issue.

*Standard of Review*

The Kanas Judicial Review Act, K.S.A. 77-601 et seq., governs this action. Under the KJRA, one of the grounds for relief is that the "[t]he agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied." K.S.A. 77-621(c)(1). Challenges involving statutory and constitutional interpretation are questions of law over which we have unlimited review. *Katz v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 877, 883, 256 P.3d 876 (2011). The burden is on the petitioner—in this case Reilly—to show error. K.S.A. 2019 Supp. 8-1020(q).

4

Whether a DC-70 implied consent advisory form complies with statutory requirements is a question of statutory interpretation, which is a question of law subject to unlimited review. *Shrader v. Kansas Dept. of Revenue*, 296 Kan. 3, 6, 290 P.3d 549 (2012). In addition, because the implied consent statute is remedial in nature, it should be liberally construed to promote public health, safety, and welfare. K.S.A. 2019 Supp. 8-1001(u). As the United States Supreme Court found in *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2178, 195 L. Ed. 2d 560 (2016), "the States and the Federal Government have a 'paramount interest . . . in preserving the safety of . . . public highways.' *Mackey v. Montrym*, 443 U.S. 1, 17, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979). Although the number of deaths and injuries caused by motor vehicle accidents has declined over the years, the statistics are still staggering."

*Revised DC-70 Implied Consent Advisory Form*

The first three issues presented by Reilly in this appeal relate to the DC-70 implied consent advisory form that was revised on February 26, 2016. We note that there is no dispute about whether Major Keys read the DC-70 form to Reilly and gave a copy to him. So, we will analyze the first three issues together.

Reilly contends that the DC-70 implied consent advisory form read and provided to him by Major Keys was unconstitutional. In particular, he argues that the DC-70 form was coercive and that his consent to the evidentiary breath test was not voluntary. In response, the KDOR contends that the advisories given to Reilly by Major Keys substantially complied with Kansas law as it existed at the time and were not coercive.

The Fourth Amendment to the United States Constitution and §15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014). Although a breath test conducted by a law enforcement officer to determine a driver's blood-alcohol content constitutes a search, breath tests—unlike

5

blood tests—"do not 'implicat[e] significant privacy concerns.'" *Birchfield*, 136 S. Ct. at 2176 (citing *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 626, 109 S. Ct. 1402, 103 L. Ed. 2d 639 [1989]). Still, valid consent to a search requires both (1) clear and positive testimony that consent was unequivocal, specific, and freely given; and (2) the absence of duress or coercion. *State v. James*, 301 Kan. 898, Syl. ¶ 4, 349 P.3d 457 (2015).

K.S.A. 2016 Supp. 8-1001(k) required that certain implied consent advisories must be given—both orally and in writing—to a driver suspected of driving under the influence before the administration of a breath test could determine a driver's blood-alcohol content. But it is not necessary that an implied consent advisory mirror the statutory language. Rather, substantial compliance with K.S.A. 8-1001(k) is usually sufficient. Substantial compliance is construed to mean that the notice given is sufficient to advise a person suspected of driving under the influence with the essentials of the statute. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 471-72, 447 P.3d 959 (2019) (citing *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 [1988]).

To assist law enforcement officers in complying with the statute and fulfilling their obligation to advise those suspected of driving under the influence of their rights, the Office of the Attorney General revised the DC-70 implied consent advisory form on February 26, 2016. We note that this was the same day that the Kansas Supreme Court issued their opinions in *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*); and *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*). We further note that the decisions in *Ryce II* and *Nece II* were not rendered—and no mandates were issued—until after Reilly's arrest.

In *Ryce I*, our Supreme Court held that it was unconstitutional to impose criminal penalties on drivers if they either withdrew consent before testing or refused to submit to

a test. 303 Kan. at 963-64. Likewise, in *Nece I*, our Supreme Court held that a driver's consent to a breath alcohol test is coercive if given after receiving implied consent advisories that are unconstitutional. 303 Kan. at 897. Both *Ryce I* and *Nece I* were stayed in anticipation of the United States Supreme Court's opinion in *Birchfield*.

On June 23, 2016, the United States Supreme Court held in *Birchfield* that a warrantless breath test of a driver is a reasonable search under the Fourth Amendment as a search incident to a lawful arrest. 136 S. Ct. at 2184. In response to the holding in *Birchfield*, our Supreme Court granted review of *Ryce I* and *Nece I* and granted rehearings in both cases. Finally, on June 30, 2017, our Supreme Court announced its decisions in *Ryce II*, 306 Kan. 682; *Nece II*, 306 Kan. 679.

In an attempt to comply with the holdings in *Ryce I* and *Nece I*, the Kansas Attorney General revised the DC-70 implied advisory consent form by deleting the two unconstitutional provisions. The portions deleted from the DC-70 form had previously provided:

> "(2) the opportunity to consent to or refuse a test is not a constitutional right;
> . . . .
> "(4) if the person refuses to submit to and complete any test of breath, blood or urine
> hereafter requested by a law enforcement officer, the person may be charged with a
> separate crime of refusing to submit to a test to determine the presence of alcohol or
> drugs, which carries criminal penalties that are greater than or equal to the criminal
> penalties for the crime of driving under the influence, if such person has:
> (A) Any prior test refusal . . . ; or
> (B) any prior conviction for [DUI] . . . or enter[ed] into a diversion agreement . . . ."
> K.S.A. 2016 Supp. 8-1001(k).

Reilly argues that DC-70 implied consent advisory form was coercive because it stated that "Kansas law (K.S.A. 8-1001) *requires* you to submit to and complete one or more tests of breath, blood or urine to determine if you are under the influence of alcohol

7

or drugs or both." (Emphasis added.) However, we note that the last time the Kansas Legislature amended K.S.A. 8-1001(k) before Reilly's arrest was in 2014. See L. 2014, ch. 131, § 1. So, during the relevant time period, K.S.A. 8-1001(k)(1) mandated that law enforcement officers give oral and written notice that "Kansas law *requires* the person to submit to and complete one or more tests of breath, blood or urine to determine if the person is under the influence of alcohol or drugs, or both." (Emphasis added.) In addition, the Kansas Legislature has explicitly expressed the intent that if a portion of the Kansas implied consent law is unconstitutional, the remaining provisions of the statute survive. K.S.A. 8-1007; see *Williamson v. Kansas Dept. of Revenue*, No. 118,325, 2018 WL 5730137, at *5 (Kan. App. 2018) (unpublished opinion). Consequently, we find that Major Keys properly advised Reilly of his rights under K.S.A. 2016 Supp. 8-1001(k)(1) as they existed at the time of his arrest.

In support of his argument, Reilly cites an unpublished case from this court, *City of Lenexa v. Gross*, No. 96,367, 2007 WL 2043580 (Kan. App. 2007) (unpublished opinion). In that case, a panel of this court upheld the district court's decision to suppress a preliminary breath test (PBT) because the officer informed the defendant that she had to take the test and the proper advisories were not given. 2007 WL 2043580, at *4. But *Gross* is factually distinguishable from this case because the results of a PBT are not at issue. Here, Reilly agreed to take an evidentiary breath test at the jail after being given both oral and written advisories as set forth in the revised DC-70 form. Moreover, unlike *Gross*—which was a criminal case—this matter involves an administrative suspension in which Reilly—as the petitioner—has the burden of proof to show error. See K.S.A. 2019 Supp. 8-1020(q).

We note that several panels of our court have rejected similar—if not identical—arguments as those made by Reilly relating to the DC-70 implied consent advisory form revised in 2016. See *Williamson*, 2018 WL 5730137, at *5-6; *McGinnis v. Kansas Dept. of Revenue*, No. 118,326, 2018 WL 5728375, at *5-6 (Kan. App. 2018) (unpublished

8

opinion); *Bynum v. Kansas Dept. of Revenue*, No. 117,874, 2018 WL 2451808, at *4 (Kan. App. 2018) (unpublished opinion). Each of those panels concluded that the DC-70 form substantially complied with the statutory language. We agree with the analysis set forth in the prior opinions of this court that the DC-70 form as revised in 2016 substantially complied with the essential requirements of the statute.

Reilly also argues that paragraph 8 of the revised DC-70 was unconstitutionally coercive. It stated: "Refusal to submit to testing may be used against you at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both." However, in the criminal context, the United States Supreme Court has held that "a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983).

In *White v. Kansas Dept. of Revenue*, No. 117,956, 2018 WL 1769396 (Kan. App. 2018) (unpublished opinion), the petitioner unsuccessfully challenged the exact version of the DC-70 at issue in this case by arguing that the DC-70 was unduly coercive. Although the petitioner's argument in *White* focused on whether the revised version of the form substantially complied with the statute, the panel found that the "provisions of the DC-70 advisory, after deletion of the provision for the charging of a separate crime for failure to submit to testing, remain valid and do not amount to unconstitutional coercion of a suspect driver's consent to testing." 2018 WL 1769396, at *4. The panel reasoned that substantial compliance with the statute did not require the officer to misadvise the DUI suspect of the possible consequences of refusing to consent to the test. 2018 WL 1769396, at *6.

Finally, we note that Reilly did not testify at the evidentiary hearing. Without his testimony, the only facts in the record come from Major Keys' testimony and from the

9

DC-27 form which the officer completed. The record reflects that Major Keys testified that Reilly consented to the evidentiary breath test after being given the implied consent advisories both orally and in writing. We find nothing in the record to suggest that Major Keys somehow coerced Reilly into consenting.

We find that the DC-70 form revised in 2016 substantially complied with the status of Kansas law at the time of Reilly's arrest. Although Reilly suggests that the failure of the implied consent advisory form was inadequate because it did not state the consequences of being required to drive with an ignition interlock device, we do not find this argument to be persuasive. We find nothing in K.S.A. 2016 Supp. 8-1001(k) to require that a law enforcement officer must advise a driver that it is possible that he or she may have to use an ignition interlock device on the vehicle. See *Robinson v. Kansas Dept. of Revenue*, 37 Kan. App. 2d 425, 427-29, 154 P.3d 508 (2007) (officer not required to inform driver of the consequences to his commercial driver's license when the driver was stopped while driving a noncommercial vehicle).

Our Supreme Court had held that administrative hearings—such as the hearing afforded to Reilly—satisfy a driver's procedural due process rights. *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 779, 133 P.3d 104 (2006). In *Ruble v. Kansas Dept. of Revenue*, 26 Kan. App. 2d 1, 3, 973 P.2d 213 (1999), a panel of this court held that K.S.A. 1994 Supp. 8-1001 does not require an officer to inform a driver that his driving privileges can also be restricted following a period of suspension. Ruble claimed that he had a right to know of any significant consequences which might affect his decision to submit to testing. However, the court found that "the 330-day restriction of driving privileges is not a punishment. The restriction is part of the civil regulatory scheme that fosters public safety by restricting the driving privileges of a person who has exhibited dangerous behavior." 26 Kan. App. 2d at 3-4. The court noted that the Kansas Legislature sets out specific notices that law enforcement officers must give and noted that it did not

10

have the authority to judicially amend K.S.A. 8-1001 to add additional requirements. 26 Kan. App. 2d at 4.

Reilly asks this court to distinguish his case from the holding in *Ruble* because the restrictions to driver's licenses are now more significant and require that an ignition interlock device be installed at a significant cost to the licensee. However, Kansas law does not require notice about these collateral consequences even though they may impact an individual's lifestyle. Moreover, we do not find *Standish v. Kansas Dept. of Revenue*, 235 Kan. 900, 683 P.2d 1276 (1984), which is cited by Reilly in support of his argument, to be applicable. In *Standish*, our Supreme Court found that a driver's refusal to consent to testing was reasonable in light of confusion. 235 Kan. at 905. Here, we find no evidence in the record to suggest that Reilly was confused.

In summary, we conclude that the DC-70 implied consent advisory form that Major Keys provided to Reilly substantially complied with the requirements of K.S.A. 2016 Supp. 8-1001(k), as well as Kansas case law as it existed at the time of his arrest. In particular, Major Keys appropriately told Reilly that his driver's license would be suspended for one year if he refused to consent to a breath test and also gave him proper notice of his opportunity to seek administrative review by the KDOR. Kansas law does not require that a law enforcement officer advise a driver of all of the collateral consequences that might result from a test refusal—such as the duration and cost associated with an ignition interlock device. Thus, we affirm the district court's decision to uphold the KDOR's suspension of Reilly's driver's license.

*$50 Application Fee*

Reilly also contends that the nonrefundable $50 application fee imposed under K.S.A. 2016 Supp. 8-1020(d)(2) is unconstitutional. While this appeal was pending before our court, the Kansas Supreme Court ruled that the application fee is

11

unconstitutional because it requires payment before a driver can obtain procedural due process without a provision for indigency. 310 Kan. at 465-66. The remedy, however, is not the restoration of driving privileges as Reilly suggests. Rather, the appropriate remedy is a refund of the $50 fee to the applicant. *Creecy*, 310 Kan. at 465-66; see *Meats v. Kansas Dept. of Revenue*, 310 Kan. 447, 450, 447 P.3d 980 (2019). Accordingly, we vacate that portion of the district court's decision upholding the constitutionality of K.S.A. 2016 Supp. 8-1020(d)(2), and we remand this matter to the KDOR with directions to refund the $50 to Reilly.

Affirmed in part, vacated in part, and remanded with directions to refund the $50 fee.